W. A. NEISWANGER, *Appellee,* v. THOMAS ORD *et al., Appellants.*

No. 15,988.

### SYLLABUS BY THE COURT.

1. PUBLICATION SERVICE—*Partnership—Firm Name.* Service by publication upon a partnership by its firm name, without specifying the individuals composing it, is not necessarily void.

2. ——— *Description of the Parties—Default Judgment—Collateral Attack.* Where a mortgage was executed to a partnership composed of John D. and Mary Knox, the grantees being therein described only by their firm style of "John D. Knox & Co.," and a tax-deed holder thereafter obtained a default decree quieting title to the mortgaged property, based upon service by publication, in an action in which the mortgagees were referred to throughout merely as "John D. Knox & Co.," the judgment is not open to a collateral attack on account of the failure of the publication notice and other portions of the record to name the mortgagees individually or to describe them more definitely.

3. TAX DEEDS—*Amount Bid by County Treasurer.* A recital in a tax deed over five years old that the land conveyed when offered at the tax sale could not be sold for a stated sum,

being the whole amount against it, and was bid off by the treasurer for the county, sufficiently shows the amount for which it was so bid off.

4. —— *Assignment of Tax-sale Certificate by County Clerk.* A tax deed over five years old which recites that property was originally bid in by the county treasurer, that thereafter an individual paid him an amount equal to the cost of redemption, and that the "purchaser" afterward paid the subsequent taxes, is not rendered void because it contains no recital that the county clerk assigned the tax-sale certificate. That the assignment was made may be inferred from the fact that the person paying the money is referred to as the purchaser.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed November 6, 1909. Reversed.

*Orla H. Foster, Fred J. Evans,* and *Fred S. Dunn,* for the appellants.

*Wheeler & Switzer,* for the appellee.

The opinion of the court was delivered by

MASON, J.: An action to foreclose a real-estate mortgage executed to John D. Knox & Co., a partnership composed of John D. and Mary Knox, was brought by W. A. Neiswanger, an assignee of the firm. Thomas Ord and Charles H. Swope defended on the ground that they held under a tax deed which was good upon its face and had been of record for more than five years, and also under a decree quieting title against the mortgagees. The trial court held that the tax deed was invalid upon its face and that the decree was void. This proceeding is brought to review the judgment based upon these rulings.

The objection made to the decree quieting title is that it was based upon publication service directed merely to "John D. Knox & Co.," and throughout the proceedings the mortgagees were described in that way, as they were in the mortgage, without further attempt to designate the members composing the firm. Counsel

for the assignee of the mortgage rely largely upon *The Johnson Machinery Co. v. Watson,* 57 Mo. App. 629, which is indeed exactly to the purpose and supports their contention. That decision, however, is entitled to weight only so far as it is supported by sound reason or authority. Its grounds are thus stated in the opinion:

"In the absence of a statute authorizing it, a firm can only be sued in the individual names of its members. This rule rests on the principle that a firm has no legal existence apart from its members. It is a mere ideal entity." (Page 634.)

In support of this statement nine cases are cited. One of them (*Proprietors of the Mexican Mill v. Yellow Jacket Silver Mining Company,* 4 Nev. 40) is clearly in point; it holds that an attempt to begin an action in a firm name is a nullity, the pleading being incapable of amendment. The five Missouri cases are explicitly to the contrary, all holding that such a defect can be corrected by amendment. One of them (*Fowler & Wild v. Williams,* 62 Mo. 403) adds that the defect is waived unless a timely objection is made, and another (*Conrades & Co. v. Spink,* 38 Mo. App. 309) that a judgment will not be reversed even when such objection is made and overruled by the trial court. In each of the other three remaining cases the attack on the judgment was direct.

The argument based upon the theory that a partnership has no legal entity apart from the members composing it is opposed to the modern tendency to give formal recognition to the actual fact that in many respects the firm has an independent status of its own.

"While it has been stated broadly that a partnership is but a relation and is not a legal being distinct from the members who compose it, still the law does take note on a wide scale of partnership as a legal entity and regards it as a unit both of rights and obligations, and there is a general tendency at this day to complete the recognition of a partnership as a body of itself with its own means appointed to its own debts." (30 Cyc. 422.)

5—81 KAN.

As early as 1841 the supreme court of Iowa noted this tendency and expressed its approval in these words:

"No very weighty argument against allowing suits to be brought in this manner [in a firm name] can be drawn from any other source than that of precedent. The defendant dealt with the plaintiffs in their partnership capacity and under their partnership name. He could not therefore be surprised by the suit being commenced by them under that name. A recovery in the present action would be quite as effectual a bar to a subsequent suit for the same demand as though the names of the partners had been particularly set forth. Formerly the courts were fastidious in requiring the names of the partners to be particularly set forth and proved, and in regarding a failure in this respect as a fatal defect at any stage of the proceedings. But this strict rule has been continually undergoing modifications, in order to encourage and facilitate the operations of mercantile traffic. If this could become a new question in the states of the Union, or even in England, we believe the courts would regard mercantile partnerships as persons in law capable of sustaining or defending suits when brought by or against them in that capacity. We are now in that very situation, and we think it better to lay down such a rule in the commencement as will not require continual alteration. This rule will be to permit the plaintiff to make his legal demand for payment under the very name by which the credit was given." (*E. A. Johnson & Co. v. Jeremiah Smith,* Morris [Ia.], 142, 143.)

The following cases affirm the absolute incapacity of a firm as such to participate in litigation: *Sheffield v. Barber,* 14 R. I. 263; *James Reid & Co. v. McLeod,* 20 Ala. 576; *Frank v. Tatum,* 87 Tex. 204. On the other hand, it was said in *Blue Grass Canning Co. v. Wardman,* 103 Tenn. 179, although the statement was not necessary to the decision:

"The plaintiffs in error were sued in their firm name and publication was made for them in that name. While it would have been proper, for greater regularity and certainty, that the names of the members of the firm should have been given in the original papers,

yet the omission of their names did not make the proc-
ess void." (Page 181.)

In *Norris Co. v. Levin's Sons,* 81 S. C. 36, a return
of foreign service on a firm by notice to one of its
members, the others not being named, was held suffi-
cient. And the use of the firm name alone in the desig-
nation of the parties has often been held to be a mere
irregularity. (15 Encyc. Pl. & Pr. 840, 841.)

In the present case every practical purpose of a pub-
lication summons was subserved by the procedure
adopted. The mortgage had been taken by the firm
under the designation of John D. Knox & Co. The pub-
lished notice addressed in the same manner conveyed
the necessary information as well as though the names
of the partners had been stated. In this instance it
might have been practicable to learn the names of the
partners, but in another that might be difficult or im-
possible. If the service attempted was entirely inef-
fectual it must be because the firm as such had no
capacity to be sued, not because it had not received con-
structive notice in the manner prescribed by the stat-
ute. We think the use of the firm name alone was only
an irregularity and did not render either the service or
the judgment void.

Moreover, we conclude also that in view of the liberal
interpretation to which its age entitles it the tax deed
is good upon its face. Two defects are pointed out—
that it does not show the amount for which the land
was bid in by the county treasurer, nor that the county
clerk ever assigned a tax-sale certificate to the person
to whom the deed was issued. The deed, after reciting
that the property was offered at the tax sale for the
amount due against it, continues: "And, whereas, at
the place aforesaid, said property could not be sold for
the sum of nine dollars and forty-two cents, being the
whole amount of tax and charges thereon, the same
was bid off by the county treasurer for said county."
This sufficiently implies that the land was bid off by

the county treasurer for $9.42, the amount for which
it had been offered.    The situation is very different
from that presented in *Robidoux v. Munson*, 75 Kan.
207, where there was nothing to show what amount
was chargeable to the land at the time of the sale.   The
amount due against the delinquent property, the
amount for which it is offered, and the amount for
which the treasurer bids it in for the county are neces-
sarily all the same.    The statutory form (Gen. Stat.
1901, § 7676) adapted to the conditions here presented
provides a blank for stating this amount in dollars and
cents in but one place, and that is in connection with
the recital of the amount bid by the treasurer.    In
*Robidoux v. Munson* the statutory form was otherwise
followed, but this blank was not filled, nor were the
figures given elsewhere in the deed.    Here, however,
while the figures are not found in the place indicated
by the statute, they are volunteered in connection with
the statement that the property could not be sold for
the amount against it, and the deed therefore supplies
all the information required.

The deed recites that after the property had been bid
in by the treasurer for the county one J. R. Myers paid
to the treasurer a sum equal to the cost of redemption,
but fails to add that the county clerk assigned the cer-
tificate of sale to him.    That being a formal recital, re-
lating to a proceeding which is the same in all tax sales
of the same class, may perhaps be more readily sup-
plied by inference than if it concerned data applicable
to this particular transaction, such as the date or
amount of a payment.    The suggestion is made that in-
asmuch as it was the duty of the clerk to execute an
assignment whenever the treasurer received the money,
it may be presumed in aid of the tax deed that the act
was performed.    It is not necessary, however, to rely
merely upon this presumption.    There is a further re-
cital that the taxes for the subsequent years were paid
by the "purchaser," manifestly referring to Myers,

who was the grantee in the deed.  One does not be-
come a purchaser by simply paying a sum of money
to the county treasurer, but by making such payment
and receiving in return an assignment of the tax-sale
certificate.  The recital that the subsequent taxes were
paid by the purchaser fairly implies that such an as-
signment had been made.

The judgment is reversed and the cause remanded
for further proceedings in accordance herewith.