### KEYSTONE BANK v. DONNELLY et al.

(District Court, E. D. Pennsylvania. May 28, 1912.)

No. 685.

EXECUTION (§ 27*)—PROPERTY SUBJECT—WHAT ARE BODIES CORPORATE—PENNSYLVANIA PARTNERSHIP ACT—"CORPORATIONS."

Under Const. Pa. art. 16, making provisions relating to private corporations, and section 13, which declares that "the term 'corporation' as used in this article shall be considered to include all joint-stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships," which definition should be applied in construing state statutes unless precluded by the context or subject-matter, an association formed under Act Pa. May 9, 1899 (P. L. 261), which, although denominated a "partnership," is given powers and privileges far in excess of those possessed by individuals or ordinary partnerships, including the power to limit the liability of its members and to make their interest transferable, is in law a corporation, and as such its franchise and rights may be levied on and sold under Act Pa. April 7, 1870 (P. L. 58).

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 64; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 2, pp. 1608–1621; vol. 8, pp. 7619, 7620.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Keystone Bank against Edward J. Donnelly and others. On final hearing. Decree for complainant.

Carr, Beggs & Steinmetz, of Philadelphia, Pa., for plaintiff.
John C. Gilpin, of Philadelphia, Pa., for defendants.

J. B. McPHERSON, Circuit Judge. The plaintiff recovered a judgment at law in this court against the Safety Banking & Trust Company, and by a regularly conducted proceeding under the Pennsylvania act of 1870 (P. L. 58) levied upon the company's franchises and rights, and bought them at the marshal's sale. The defendants, or some of them, had been carrying on the business of the company before the sale, and they have continued to carry it on without interruption or material change, asserting that the company was only a partnership, and had no franchises or rights that were subject to execution. The proceeding, it is said, was an idle formality, by which nothing was acquired. It appeared that the Safety Banking & Trust Company was organized under the state law of 1899 (P. L. 261). If (as I believe) it became a corporation thereby, its franchises and rights might be sold under the act of 1870, and the plaintiff is now entitled to equitable relief. If I am right, it need not be decided whether the act of 1870 may properly be applied, not only to corporations strictly so called, but also to similar associations.

It is hardly necessary to say that, in determining whether the act of 1899 empowers the creation of corporations or of partnerships, the name used by the statute is not decisive. If the association is really a corporation—that is, if it receives the distinctive rights and privileges of a corporation—it cannot be a partnership, no matter what label the Legislature may choose to affix. The Pennsylvania Constitution has gone far to settle controversy on this subject. It declares in section 13 of article 16—this article makes numerous provisions concerning "private corporations"—that:

"The term 'corporation' as used in this article shall be considered to include all joint-stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships."

And this I think may fairly be quoted as the constitutional definition of a corporation, which should be applied unless context or subject-matter should forbid.

Let us turn, therefore, to the act of 1899 and inquire what powers or privileges it gives to an association organized thereunder. That it calls the association a "partnership" is of some, but not of much, value. It certainly does not use the word in its ordinary sense, for nobody can suppose that such a statute would have been passed, except for the definite purpose of authorizing the formation of an extraordinary "partnership"—an association possessing special privileges, similar at least to those possessed by a corporation. An ordinary partnership for an ordinary purpose did not need legislative authority. But an unusual "partnership" did need such authority; and accordingly this rather remarkable statute begins at once to bestow unusual powers and privileges. Section 1 allows any two or more persons who may wish to conduct any kind or kinds of business, trade, or

occupation (with a few exceptions) "to associate themselves in partnership," and to subscribe as much or as little capital as they please without being obliged to pay any of it in -before beginning business. In other words, the so-called capital may consist entirely of lawsuits. As they may thus do business purely on credit, without any cash in the treasury, there will naturally be debts. As the next step to protect the "partners," they may limit their liability "for the debts of the partnership to the amount of capital *subscribed* by such partner or partners respectively"; and the act proceeds to specify how this limitation may be accomplished. The process is simple. The "partners" need only declare that they so desire. They may also fix the "duration" of the association, no maximum being established; and, indeed, it appears clearly from section 8 that no term whatever need be fixed. The duration, therefore, may be perpetual. Or, if a term should be originally fixed, this may be extended indefinitely (section 8), "by articles specifying the fact of such renewal, and the length of time fixed for the duration of the renewed partnership."

Section 3 states again in unambiguous words that the liability of the members is to be limited:

"No member of any such partnership thus formed, recorded, and published, whose liability is stated as intended to be limited in the manner here-inbefore set forth, shall be liable for its debts under any circumstances, saving to the extent of the amount of his or her subscription, with interest on unpaid subscriptions from the date or dates at which the same became actually due and payable. Payment of the amount of the subscription of such member of the partnership, with interest as aforesaid, shall exonerate such partner from all further liability."

And the association is so distinct from the partners that:

"A partner or partners whose liability is thus limited shall not be precluded from transacting business with or for the partnership."

By section 4 "a majority of the number in (and?) interest of the partners" may make by-laws and may alter them from time to time. Such by-laws may do what corporation by-laws usually do, namely, may constitute "official positions for the transaction of the business of the partnership," and fix "the powers and duties of the respective officers prescribed therein." Either in such by-laws or in some other unspecified way, the partners may approach even more closely to the distinctively corporate method of doing business; for at their option they

"may provide that certain only of the members shall have active charge of the business and be authorized to enter into contracts, undertakings, or engagements whereby the partnership shall be held liable, and may change the same as they see fit."

But they need not state this provision in the original articles, unless they so desire, and there is no penalty for failing to make it public. They may also at their option "adopt and use a common seal."

By section 7:

"Interest in such partnership shall be personal estate, and may be transferred, given, bequeathed, distributed, sold, or assigned under such rules and regulations as may from time to time be prescribed by a vote of the majority in number and interest of the partners."

In the unlikely contingency that no rules and regulations on this subject shall be adopted, the transferee shall not be entitled to participate in the subsequent business of the partnership, unless elected by a majority in number and interest of the remaining partners. It is further provided that:

"The transfer of any interest, however accruing, shall not dissolve the partnership, nor shall said partnership be dissolved by reason of the death of one or more of the partners unless the articles of association shall prescribe to the contrary. In case of a change in the members of the partnership by reason of death, transfer or otherwise, it shall not be necessary to make any publication of the fact thereof."

This section inevitably suggests shares of corporate stock and their transfer.

Section 10 allows the articles of association to go so far as to provide that the partnership is not to be dissolved, even by a vote of

"the majority in number and interest of those who at such time shall constitute the partnership."

Section 11 declares that the partnership

"*shall* sue and be sued in the partnership name, and not by or in the individual names of the partners."

Under this vicious statute, the Safety Banking & Trust Company was organized to conduct "a banking trust and agency business." Its duration was fixed at 20 years; but, of course, this might be renewed and extended for a much longer, and probably an indefinite, period. By-laws were adopted, which have never been changed or revoked, and of these the following sections are relevant:

### "Article I.

"1. The partners shall be represented by an executive committee of ―――― persons, all of whom shall be partners. Each member of the committee shall hold office until his successor is elected. All the business of the partnership within the scope of the recorded articles of association shall be transacted by this committee, and no partner shall have the authority to bind his fellows by his acts unless special written authority be delegated to him by the executive committee or by the partners in meeting assembled. The partners may restrict the authority of the executive committee at any time.

"2. The partners shall elect a president, a vice president, a cashier and a secretary. Each officer shall hold office until his successor is elected. The duties of these officers shall be such as are customary in the case of corresponding officers of corporations, but the executive committee shall have the power to define the duties and powers of all officers from time to time. * * *

### Article II.

"1. At all meetings of the partners votes shall be taken in proportion to interest; that is to say, each partner shall be entitled to cast as many votes as he holds shares in the partnership. Provided, that in the following cases and in no others a majority in number of the partners as well as in interest shall be necessary to the legal adoption of the measure under consideration: (1) Changes in the method of transferring interests in the partnership; (2) election of the purchaser of an interest as a member of the partnership; (3) resolutions to dissolve the partnership; (4) resolutions to alter these by-laws, in which case the provision of article VI shall prevail. When votes in proportion to interest are taken at partnership meetings, each partner

whose name is registered in the company's book shall be entitled to cast one vote for each share held by him.

"3. In case it is desired to increase the capital of the company additional subscriptions may be made by partners or others, and in such case amended articles of partnership shall be executed and filed in accordance with the provisions of the statute.

"Article III.

"1. Each partner shall be registered as a member of the company in a stock book kept for that purpose. The legal title to shares shall be transferable only by transfer on this book by power of attorney duly signed by the transferror. Each partner shall have the right to sell or pledge one or more or all his shares; and equitable rights in shares may be transferred by the delivery of the partner's certificate with power of attorney indorsed thereon as in the case of corporate stock certificates.

"2. The vendee or pledgee of a share shall be entitled to acquire the legal title thereto by transfer upon the book of the company upon presentation of the certificate for the shares and a power of attorney from the transferror, but not otherwise. The company shall have the right to refuse to permit the transfer of any share or shares belonging to any partner who has failed to pay any call upon his subscription until such payment has been made.

"3. The vendee or pledgee, upon being registered in the book of the company, shall become a member of the partnership, subject (in the case of the pledgee) to the right of the pledgor to resume his membership in accordance with the terms of the contract of pledge. A partner who desires to make an equitable assignment of his share may do so by delivery of his certificate with a blank power of attorney accompanying the same; and he may execute a proxy entitling the assignee to vote on behalf of the assignor and in respect of the share so assigned during the continuance of the assignee's interest.

"4. The person in whose name a share stands registered in the company's book at the date at which a dividend is declared by the executive committee shall alone be entitled to receive payment thereof. The person in whose name a share stands registered at the date at which a call in respect of said share is made payable by the executive committee shall alone be liable to the company therefor; but nothing in this by-law shall be taken to impair the liability of a vendor of a share for a call already made thereon, whether or not the company shall have permitted a transfer thereof. Nor shall this by-law be construed as an attempt to relieve any subscriber of his personal liability, up to the amount of his subscription, to creditors who became such during his membership in the company.

"Article V.

"The partnership may be dissolved and wound up at any time by a vote of a majority of the partners in number and interest."

The original associates disposed of their interests in various ways and other persons took their place. The capital subscribed was $50,-000, of which 20 per cent. is said to have been paid in, and it was divided into shares, each of $100 par, in the following form:

"Safety Banking & Trust Company, Philadelphia, Pa.

"Capital                                                    $50,000.00

"This is to certify that ——— is the owner of ——— shares, of the par value of one hundred dollars, of the capital of the Safety Banking & Trust Company, a copartnership with liability limited under the act of assembly of Pennsylvania, passed May 9th, 1899, subject to the by-laws of said company, transferable only on the books of the company, in person or by attorney, on surrender of this certificate.

"In witness whereof, the duly-authorized officers of this copartnership have hereunto subscribed their names at Philadelphia, Pennsylvania, this 13th day of April 1904.                              ———————, President.

"———————, Secretary.    [Seal.]"

On the back was indorsed:

"Shares $100 Each.

"For value received, ——— hereby sell, assign, and transfer unto ——— ——— shares of the capital represented by the within certificate, and do hereby irrevocably constitute and appoint ——— attorney to transfer the said shares on the books of the within-named company, with full power of substitution in the premises.

"Dated ———.

"In the presence of ———."

I think the foregoing facts speak for themselves and require no comment. The Trust Company had all the essential marks of a corporation, and in my judgment is to be treated as such an association. It follows that the plaintiff acquired at the marshal's sale the franchises and privileges belonging to the company, and is entitled to proper relief.

A decree may be prepared in accordance with this opinion.