No. 23,506.

T. W. HARRIS, *Appellee*, v. UNITED STATES MEXICO OIL COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CORPORATIONS—*A "Massachusetts Trust" Is a Corporation*. A "Massachusetts trust" is a corporation within the meaning of that word as defined in section 6 of article 12 of the Kansas constitution as including "all associations and joint-stock companies having powers and privileges not possessed by individuals or partnerships," and as used in statutes the subject matter of which makes the definition pertinent and within the reason of the legislation. The decision to that effect in *Lumber Co. v. State Charter Board*, 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879, is adhered to.

2. SAME—*Service on a "Massachusetts Trust" by Publication*. In a proper case service by publication may be had upon a "Massachusetts trust" which is not a resident of this state, as a foreign corporation.

3. SAME—*Defect in Publication Service—Cured by Voluntary Appearance*. Any defect in the service by publication in this case is held to have been cured by the insertion in a motion to set aside the judgment against the defendant, on account thereof, allegations denying the merits of the plaintiff's claim upon the facts.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed February 11, 1922. Affirmed.

*W. F. Jackson*, of Fort Scott, and *William W. Fry*, of St. Paul, Minn., for the appellant.

*J. I. Sheppard*, and *James G. Sheppard*, both of Fort Scott, for the appellee.

The opinion of the court was delivered by

MASON, J.: On April 9, 1920, T. W. Harris brought an action in the district court of Bourbon county against a defendant described as United States Mexico Oil Company, a corporation, asking judgment for $2,999 claimed to be due him under a written contract with such defendant executed May 24, 1918, for the drilling of three wells, one north and two south of the Osage river, in Bourbon

county. An attachment was issued and levied and service was made by publication under allegations that the defendant was a foreign corporation and a nonresident of Kansas. On May 29, 1920, a motion was filed in behalf of "the above styled and named defendant, the United States Mexican Oil Company, a corporation, and also persons interested and owning the property attached," to dismiss the action for want of jurisdiction of the defendant and the subject matter, alleging that the action had been improperly brought in Bourbon county and that no valid service had been made. No proof was made or offered in support of this motion, and it was overruled on the day it was filed. On January 5, 1921, judgment was rendered in favor of the plaintiff, finding that the defendant was indebted to him in the amount claimed, and ordering the attached property sold to pay the debt. On March 4, 1921, the defendant, describing itself as "the United States Mexico Oil Company, a voluntary trust of Wichita, Kansas," filed a motion to vacate the judgment for want of jurisdiction, accompanied by an affidavit setting out among other matters the details of its organization as a "Massachusetts trust." The motion was overruled and the defendant appeals.

1. A principal contention of the defendant is that it is a voluntary trust and not a corporation and that the proceedings against it are void on that account. This court has already decided that an organization of the character of the defendant is deemed to be a corporation within the meaning of the Kansas law making permission from the charter board necessary to enable a corporation to do business in this state. (*Lumber Co. v. State Charter Board,* 107 Kan. 153, 161, 190 Pac. 601, 10 A. L. R. 879.) The defendant urges, however, that that case is out of harmony with decisions in other states and with the reason of the matter, and ought to be overruled. The effect of the decision was to hold that an organization in the form known as a "Massachusetts trust" is subject to regulation and control under the existing statutes regarding corporations. A regular session of the legislature has since been held without making any change in the law as so interpreted. This implies legislative acceptance of the policy of regulating organizations such as the defendant and gives room for the presumption that if the existing law had been otherwise interpreted such regulation would have been provided by new legislation—a special reason why the decision should not be overturned except upon the strongest grounds.

Except for the section of the Kansas constitution relied upon in the case above cited, it may be conceded that "Massachusetts trusts" are not to be classed as corporations. (See Note, 7 A. L. R. 612, 621, 628.) That section, giving a definition of the term corporation which we have held to include voluntary trusts such as the defendant, reads:

"The term corporations, as used in this article, shall include all associations and joint-stock companies having powers and privileges not possessed by individuals or partnerships; and all corporations may sue and be sued in their corporate name." (Art. 12, § 6.)

In Idaho a somewhat similar constitutional definition has been held (one of the three justices dissenting) not to include such organizations. (*Spotswood v. Morris*, 12 Idaho, 360.) The provision there interpreted, however, contains two very significant words which are omitted from that of the Kansas constitution—those which we italicize in the following copy of the section:

"The term 'corporation,' as used in this article, shall be held and construed to include all associations and joint stock companies having or exercising any of the powers or privileges *of corporations* not possessed by individuals or partnerships." (Idaho Const., Art. 11, § 16.)

The word "corporations" in the italicized phrase obviously means corporations in the general sense, not enlarged or modified by the definition in which it occurs; otherwise the word would be defined in its own terms. The powers and privileges of corporations as such, as the word is ordinarily used, may well be regarded as those conferred by legislative act. That this feature of the matter influenced the decision of the Idaho court is indicated by the language of the syllabus—"To legally possess or exercise powers or privileges of corporations requires a sovereign grant." When the Kansas constitution was adopted a provision like that of the constitution of Idaho, including the words "of corporations," was contained in the constitutions of New York (Constitution of 1846, Art. 8, § 3) and Michigan (Constitution of 1850, Art. 15, § 11), with which the framers of our own constitution were presumably familiar. The Kansas provision was obviously derived from that of New York. Its omission of the words "of corporations" must be regarded as intended to affect the meaning and give to it much the same force as though it read: "The term corporations, as used in this article, shall include all associations and joint stock companies having powers and privileges not possessed by individuals or partnerships,

whether or not such powers and privileges are of a character peculiar to corporations as the word is ordinarily used—that is, whether or not they result from a legislative grant." It is quite obvious that the purpose was not to embody in the constitution the ordinary definition of the word corporations but to give to that word as used in the article of which the provision was a part a special and enlarged meaning. The kind of association there described is by the terms of the section itself authorized to sue and be sued. The definition so adopted is not necessarily to be applied to the word corporation wherever it is used in the statute; but where the subject matter makes it pertinent and within the reason of the legislation that is the natural course. As was pointed out in the Lumber Company case trusts of the character of the defendant have among other powers and privileges not possessed by individuals or partnerships those of continuous existence and exemption from personal liability. They enjoy practically all the advantages of ordinary corporations, and no reason is apparent why they should not be subjected to the same obligations and regulations. Of their origin it is said in the defendant's brief:

"The thing that brought these Pure Trusts in existence in Massachusetts and New York, was the fact that corporations could not hold real estate and deal in the same, and the Trust organization was created to do the very thing that corporations were not permitted to do, and were made necessary to transact business which corporations were forbidden by law to transact."

The defendant cites and relies upon a decision that a statutory limited partnership is not a corporation within the application of the rule treating a corporation as a citizen of the state creating it for the purpose of determining the jurisdiction of the federal courts where based on diverse citizenship—a rule founded on the presumption, or rather fiction, that all the stockholders of a corporation are citizens of the state under whose laws it is created. (*Great Southern Fire Proof Hotel Co. v. Jones,* 177 U. S. 449.) The case, in our judgment, sheds no light upon the question we are now considering. In the opinion it was said:

"Nor can we accede to the suggestion that this question of jurisdiction is affected by the clause of the Constitution of Pennsylvania providing that the term 'Corporations,' as used in article XVI of that instrument, 'shall be construed to include all joint stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships,' Const. Pa., art. XVI, § 13. The only effect of that clause is to place the joint stock companies or associations referred to under the restrictions

imposed by that article upon corporations; and not to invest them with all the attributes of corporations. . . . That a limited partnership association created under the Pennsylvania statute may be described as a *'quasi* corporation,' having some of the characteristics of a corporation, or as a 'new artificial person,' is not a sufficient reason for regarding it as a corporation within the jurisdictional rule heretofore adverted to. That rule must not be extended. We are unwilling to extend it so as to embrace partnership associations." (pp. 456, 457.)

In *Keystone Bank v. Donnelly*, 196 Fed. 832, an association organized under a Pennsylvania statute describing it as a partnership was held to be a corporation by virtue of the constitutional provision quoted in the foregoing extract. In the opinion it was said:

"It is hardly necessary to say that, in determining whether the act of 1899 empowers the creation of corporations or of partnerships, the name used by the statute is not decisive. If the association is really a corporation—that is, if it receives the distinctive rights and privileges of a corporation—it cannot be a partnership, no matter what label the Legislature may choose to affix. The Pennsylvania Constitution has gone far to settle controversy on this subject. It declares in section 13 of article 16—this article makes numerous provisions concerning 'private corporations'—that: 'The term "corporation" as used in this article shall be considered to include all joint-stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships.' And this I think may fairly be quoted as the constitutional definition of a corporation, which should be applied unless context or subject-matter should forbid.

"Let us turn, therefore, to the act of 1899 and inquire what powers or privileges it gives to an association organized thereunder. That it calls the association a 'partnership' is of some, but not of much, value. It certainly does not use the word in the ordinary sense, for nobody can suppose that such a statute would have been passed, except for the definite purpose of authorizing the formation of an extraordinary 'partnership'—an association possessing special privileges, similar at least to those possessed by a corporation. . . The Trust Company had all the essential marks of a corporation, and in my judgment is to be treated as such an association." (pp. 833, 837.)

The constitution of Minnesota, the state in which the trust agreement creating the defendant association was executed, contains a provision quite similar in effect to that we are considering, although the language is somewhat different. It reads:

"The term 'corporations' as used in this article, shall be construed to include all associations and joint stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges, and all corporations shall have the right to sue,

and shall be liable to be sued in all courts, in like manner as natural persons." (Minnesota Const., Art. X, § 1.)

So far as we discover, the precise question we are now considering has not been passed upon by the Minnesota supreme court, although various expressions on its part are cited by the defendant and perhaps tend to support its theory.

We find nothing in the argument presented by the defendant or elsewhere sufficient to justify us in overruling the decision already made that "Massachusetts trusts" are corporations within the meaning of our statutes where reasonably applicable.

2. Somewhat the same question we have just discussed, but in a different form, arises upon the contention of the defendant that at all events it is not a foreign corporation. It asserts that it is not a corporation within the meaning of that word as used in the constitution and statutes of Minnesota. Granting that to be the case, the fact is wholly without significance here except as this court might regard as persuasive the reasoning of the courts of Minnesota in interpreting constitutional and statutory provisions similar to our own. If the defendant is the kind of an organization to which the Kansas constitution and statutes apply the name corporation and upon which they impose certain regulations, it is wholly beside the purpose that the Minnesota constitution and statutes do not apply that term to it and do not impose such regulations upon it. It was in a sense created under the laws of Minnesota, inasmuch as it was organized there and the laws there in force permitted such organization by not forbidding it. That the permission resulted from an interpretation by the courts of the common law does not in this respect make the situation materially different from what it would be if the legislature had enacted a declaratory statute to the same effect. We need not determine at this time how far a Massachusetts trust partakes of the characteristics of an ordinary corporation with respect to its residence being unchangeably fixed by the place of its creation. All that is presently necessary is to decide, as we do, that such an organization may be a nonresident of this state and as to it a foreign corporation—that is to say, not a corporation within the meaning of the law of some other jurisdiction, but an association known to our statutes as a corporation which is not a resident of this state.

3. The affidavit which was filed in support of the motion to set aside the judgment, and which was in terms made a part of it,

did not set out any facts indicating that the defendant was a resident of Kansas. It did allege, however, that one of its three trustees (styled in the affidavit the managing trustee) to the knowledge of the plaintiff was personally present in this state when the action was begun and was almost constantly at an office of the company in Wichita, and that personal service of summons could have been made upon him. We need not now decide whether the delivery in this state of a copy of a summons to one of the three trustees would be a sufficient service upon the defendant, nor whether the possibility of such delivery would be a bar to service by publication. The affidavit for publication was sufficient upon its face. The defendant having knowledge of the bringing of the action made no attempt to show its statements to be untrue until after judgment had been rendered. The judgment was not void in any event. (*Davis v. Land Co.*, 76 Kan. 27, 90 Pac. 766; *Duphorne v. Moore*, 82 Kan. 159, 107 Pac. 791.) The means of attack adopted by the defendant was not one entitling it to favorable consideration upon a disputed issue of fact. But it is sufficient for present purposes to say that in the affidavit of the defendant already referred to nonjurisdictional as well as jurisdictional grounds for the vacation of the judgment were urged. Besides setting out that the defendant had not been about to dispose of its property with the intent to defraud its creditors—the reference obviously being to a ground alleged in the affidavit for attachment—the affidavit in behalf of the defendant included this language among other allegations of the same sort:

"That the said 'Trust' [referring to the defendant] did not enter into any contract with one T. W. Harris on the 24th day of May, 1918, for the reason the same was not then in existence, that on said 24th day of May, 1918, the said 'Trust' did not own leases south of Osage River in Bourbon County, nor did it authorize the drilling of wells on same . . . "

These averments being addressed to the merits of the plaintiff's claim upon the facts are nonjurisdictional, and in raising them in this manner the defendant entered a general appearance and waived any defect in the service. (*Barnett v. Insurance Co.*, 78 Kan. 630, 97 Pac. 962.)

We do not understand that any appeal was taken from the order overruling the motion to dismiss the case which was filed May 29, 1920, or that complaint is now made of that ruling. The motion, however, was properly overruled because it was not verified and no showing of fact was made in support of it, and for this reason

the jurisdictional point was not saved and the subsequent general appearance became effective.

The defendant asserts that the publication notice was defective because the first publication was made April 15, 1920, and the proof of publication was made May 1, 1920. It is argued that it was impossible to make three weeks' publication between these dates. The proof showed the publication to have been made in a weekly paper, and we see no reason why the insertion of the notice in the issues of April 15, April 22 and April 29 was not sufficient. However, the general appearance would cure the defect if it existed.

No injustice can result from upholding the judgment in the present case. Under the liberal practice prevailing in this state the defendant might before trial have made its showing against the validity of the service and upon an adverse ruling upon that point could without waiving it have defended on the merits. It elected to rely solely upon the jurisdictional question presented in an attack upon the judgment. By including nonjurisdictional grounds in its motion to set aside the judgment it entered a general appearance and thereby waived all defects in the service. If it were conceded that the defendant is not a corporation within the constitutional definition, and that the provision that corporations may sue and be sued in their corporate name does not apply to it, the contention that it is not such a legal entity as to be capable of being sued would still be unsound. A judgment is not a nullity although rendered against a mere partnership by its firm name upon publication notice addressed in that manner. (*Neiswanger v. Ord,* 81 Kan. 63, 105 Pac. 17; Notes, 29 L. R. A., n. s., 285, 287. See, also, *Packing and Provision Co. v. Casing Co.,* 34 Kan. 340, 8 Pac. 403.)

The judgment is affirmed.