(625 P.2d 11)
No. 51,082

In the Matter of the Appeal of Armed Forces Cooperative Insuring Association from a Decision of the Board of Tax Appeals, State of Kansas.

Opinion filed March 20, 1981.

*Patrick J. Reardon,* county attorney, for appellants Board of County Commissioners of Leavenworth County, Kansas, and Leavenworth County Appraiser.

*James N. Snyder,* of Snyder and Snyder Law Offices, of Leavenworth, for appellee Armed Forces Cooperative Insuring Association.

Before PARKS, P.J., ABBOTT and REES, JJ.

REES, J.: This appeal arises out of a challenge made by the Armed Forces Cooperative Insuring Association (AFCIA) to the jurisdictional authority of the State of Kansas and its subordinate entities to subject to ad valorem taxation the personal property owned by AFCIA located on the Fort Leavenworth reservation. By its order entered after hearing, the Board of Tax Appeals denied AFCIA's challenge and held the property taxable. On appeal by AFCIA, the District Court of Leavenworth County held the Board of Tax Appeals order was unreasonable, arbitrary and capricious, ordered reversal and vacation of the Board of Tax Appeals order, and ordered removal of the property from the tax rolls. The Board of County Commissioners of Leavenworth County and the Leavenworth County appraiser appeal from the district court decision and orders.

AFCIA is engaged in the mail order insurance business. Its personal property located on the Fort Leavenworth reservation is its only property, real or personal, having a situs in the State of Kansas. The property is office equipment, an automobile and an office building owned by AFCIA standing on reservation land leased to AFCIA by the United States. The lease is terminable by AFCIA by ten days' notice to the Secretary of the Army. It is revocable at will by the Secretary of the Army.

AFCIA is an unincorporated association organized in 1887. It describes itself and is designated by the Department of the Army and the Department of the Navy as a "non-profit military association." So far as the record in this case discloses, Fort Leavenworth has been the location of AFCIA's only place of business since its organization. The association membership is comprised of and limited to active and certain retired commissioned officers and warrant officers. Insurance coverage is available only to members and military personnel in the three highest enlisted grades. The latter are not eligible for AFCIA membership.

AFCIA neither holds a Kansas certificate of incorporation nor has it filed or undertaken to file articles of incorporation with the Kansas Secretary of State or the comparable office or officer of any other state. It has never applied to any state for incorporation. It is governed by an unsalaried executive committee of five senior officers on active duty at Fort Leavenworth who are elected annually by the members. The executive committeemen are members of the association. They serve at the pleasure of their commanding general at Fort Leavenworth and only upon his written approval. The association employs a civilian operating staff of five, all of whom are located at Fort Leavenworth. No salesmen or agents are employed. AFCIA is not licensed as an insurer by any state. The association has not authorized or issued capital stock. "Distribution" of association income realized after deduction of contributions to reserves and operating costs from underwriting and investment gains is made as credits against premiums due. It files federal income tax returns and pays federal income tax as computed. It pays no state income taxes.

The scope of judicial review of the order of the Board of Tax Appeals deserves limited mention.

A succinct analysis of our law concerning the right to appeal from decisions of administrative boards and the scope of review of those decisions is found in *Brinson v. School District,* 223 Kan. 465, 467-468, 576 P.2d 602 (1978). Application of the principles and rules there stated requires us to look to K.S.A. 74-2426. That section authorizes an appeal by an aggrieved party from a final order of the Board of Tax Appeals. The appeal is to the district court. K.S.A. 74-2426(*b*)(2). The appeal is not heard by the district court as a trial de novo, but is heard and determined on the Board transcript and any other public records of which the Board can be

held to have taken notice. K.S.A. 74-2426(c)(2). The scope of the district court review, that is, the question for decision by the district court, is whether the Board of Tax Appeals order is unreasonable, arbitrary or capricious. K.S.A. 74-2426(e). Appeals may be taken from the district court to the appellate courts as in civil cases. K.S.A. 74-2426(c)(3). Thus, the question before us is whether as a matter of law the trial court erred in its decision that the Board of Tax Appeals was unreasonable, arbitrary and capricious. This requires that we review the Board transcript and any other public records of which the Board can be held to have taken notice.

Although K.S.A. 74-2426(e) speaks of unreasonableness, arbitrariness and capriciousness as the issues for judicial review, questions of statutory construction and application of law are included therein; there is authority in the reviewing court to determine whether the Board action was lawful. See, for example, *Shapiro v. Kansas Public Employees Retirement System,* 211 Kan. 452, 459-460, 507 P.2d 281 (1973).

The lands lying within the boundaries of the Fort Leavenworth reservation have been owned by the United States since their acquisition from France in 1803 as a part of the Louisiana Purchase. They were not acquired by the United States pursuant to K.S.A. 27-101 (L. 1927, ch. 206, § 1). It appears the original reservation of the Fort Leavenworth lands by the United States for its purposes was made by an Executive Order in 1854. When Kansas was admitted as a state in 1861, the United States did not reserve jurisdiction. On February 25, 1875, upon passage by the state legislature of "An Act to Cede Jurisdiction to the United States over the territory of the Fort Leavenworth Military Reservation," L. 1875, ch. 66, § 1, Kansas ceded to the United States exclusive jurisdiction over and within the territory included within the limits of the reservation saving to the State of Kansas "the right to tax railroad, bridge and other corporations, their franchises and property," on the reservation. Similar language of reservation of jurisdiction appears in K.S.A. 27-102. (The background we have highly summarized may be found by examination of K.S.A. 27-101; K.S.A. 27-102; K.S.A. 27-104; L. 1875, ch. 66, § 1; *Benson v. United States,* 146 U.S. 325, 36 L.Ed. 991, 13 S.Ct. 60 [1892]; *Fort Leavenworth R. R. Co. v. Lowe,* 114 U.S. 525, 29 L.Ed. 264, 5 S.Ct. 995 [1885]; *Hayes v. United States,* 367

F.2d 216 [10th Cir. 1966]; *Murphy v. Love,* 249 F.2d 783 [10th Cir. 1957]; *Ft. L. Rld. Co. v. Lowe, Sheriff,* 27 Kan. 749 [1882]; G.S. 1915, ch. 59, § 5784; Act for Admission of Kansas into Union, Jan. 29, 1861, ch. 20, §§ 1, 2, 3, 4, 5, 12 Stat. 126, 127, 128.)

As to the case before us, the jurisdiction of the United States on the one hand and the State of Kansas on the other hand is delineated by the 1875 Act. That cession and reservation of jurisdiction is unqualified as to usage or purpose of ownership. Neither the use of the lands nor the purpose of the United States ownership is of any moment. (See *Hayes v. United States,* 367 F.2d at 220; *Benson v. United States,* 146 U.S. at 330.) Likewise, the cession, or recession, by the United States to the states of substantial jurisdiction to levy and collect sales or use taxes with respect to sale and use occurring within lands owned by the United States and to levy and collect income taxes as to persons residing within lands owned by the United States (4 U.S.C. §§ 105-110) is immaterial.

In rejecting AFCIA's challenge, the Board of Tax Appeals drew three conclusions: (1) the organizational character of AFCIA is such as to bring it within the operation of the term "other corporations," (2) personal property is taxable according to its use, not ownership, and (3) the property does not fall within explicitly stated state statutory exemptions. The County does not rely on the second conclusion of the Board of Tax Appeals and AFCIA has never strenuously relied upon a claim of entitlement to statutory exemption, the subject of the third conclusion.

The County correctly identifies the dispositive issue for our consideration as whether the district court erred in its decision that AFCIA is not a corporation and therefore does not come within the phraseology "railroad, bridge and other corporations" contained within the statutory language saving to the State of Kansas the right to tax. That decision of the trial court is the foundation of its holding that the Board of Tax Appeals order was unreasonable, arbitrary and capricious.

The state alone can grant authority to incorporate. *Pape v. Capitol Bank,* 20 Kan. 440, 445 (1878).

"The right to act as a corporation is a special privilege conferred by the sovereign power, and until there is a grant of such right, whether by special charter or under general law, there can be no corporation. The commencement of corporate existence depends on the terms of the statute under which the corporation is created. As a general rule, the existence of corporations formed under

general laws commences when there has been a substantial compliance with the conditions precedent prescribed by the statutes." 18 Am. Jur. 2d, Corporations § 63, p. 606.

"Corporate franchises are of three classes: (1) the right to organize and exist as a corporation; (2) the right to act generally as a corporation; and (3) the special privileges which are not possessed by individuals under general laws. The franchise to be a corporation is thus distinguished from the franchise to exercise the powers of such corporation conferred in its charter.

"Corporate existence constitutes the primary corporate franchise, being the result of a grant of special privileges to the incorporators which enables them to act for certain designated purposes as a single individual and exempts them, unless otherwise specially provided, from individual liability. The powers granted to a corporation by the sovereign and specified in its charter are frequently referred to as the secondary corporate franchise and, together with the primary franchise of corporate existence, are known as the general franchises of the corporation. The franchises of the first and the so-called second classes are incident to all corporations. Every corporation has by implication authority to acquire and dispose of property and to carry on business as a private person would do, for the purposes for which the corporation is organized.

"Aside from these general franchises, there may be vested in the corporation, as in individuals, special franchises which are separate and distinct from the general franchises." 18 Am. Jur. 2d, Corporations § 66, pp. 608-609.

"Franchises are rights or privileges conferred by grant of the sovereign." 18 Am. Jur. 2d Corporations § 67, p. 609.

In *State v. Knights of the Ku Klux Klan,* 117 Kan. 564, 569, 232 Pac. 254 (1925), we find:

"The definition of a corporation given in 14 C.J. 49 is as follows:

"'A corporation is a collection of natural persons, joined together by their voluntary action or by legal compulsion, by or under the authority of an act of the legislature, consisting either of a special charter or of a general permissive statute, to accomplish some purpose, pecuniary, ideal or governmental, authorized by the charter or governing statute, under a scheme of organization, and by methods thereby prescribed or permitted; with the faculty of having a continuous succession during the period prescribed by the legislature for its existence, or having a corporate name by which it may make and take contracts, and sue and be sued, and with the faculty of acting as a unit in respect of all matters within the scope of the purposes for which it is created.'"

Disclaiming exactness of statement and acknowledging the existence of deviations authorized by statute, corporate charter or otherwise, we believe that included among commonly accepted corporate characteristics are the usage of an adopted corporate name; issued and paid for transferable units of ownership interest held by stockholders; a board of directors, elected and vested with such powers as are delegated by the stockholders, which manages the business and affairs of the corporation; by-laws

adopted by the stockholders or by the board of directors if delegated that power by the stockholders; officers elected by the board of directors; and the conduct of business in the name and on behalf of the corporation.

AFCIA is not a de jure corporation (*State, ex rel., v. Triplett,* 213 Kan. 381, 383-384, 517 P.2d 136 [1973]), either domestic or foreign. This is not disputed by the County.

Is AFCIA a de facto corporation? No.

At 18 Am. Jur. 2d, Corporations § 51, p. 595, is found the following:

"It is ordinarily essential to the existence of a de facto corporation that there be (1) a valid law under which a corporation with the powers assumed might be incorporated; (2) a bona fide attempt to organize a corporation under such law; and (3) an actual exercise of corporate powers."

That these essentials to the existence of a de facto corporation are and have long been a part of the law of our state is confirmed by what is said in *Pape v. Capitol Bank,* 20 Kan. at 445:

"[W]hen parties have associated themselves together for the purpose of organizing a corporation under a general law, and have proceeded in good faith to take all the steps supposed necessary to complete such incorporation, and on the faith thereof engaged in business as a corporation for a series of years, a party who has repeatedly dealt with them as such corporation will not, when sued on a note and mortgage held by it, be permitted to show, as a defense to the action, that there was some mere technical omission in the steps prescribed for incorporation. The corporation is one *de facto;* and only the state can then inquire, and that in a direct proceeding, whether it be one *de jure.* The authorities upon questions of this kind are mainly in cases where the incorporation was by special charter. There, the charter, with proof of acts of user under the charter, has almost uniformly been held sufficient as against any collateral inquiry. (Angell & Ames on Corp., §§ 91 to 94, and § 635, and cases cited in notes.) And we suppose the same principle obtains in corporations organized under a general law. There must in such cases be a law under which the incorporation can be had. There must also be an attempt in good faith on the part of the corporators to incorporate under such law. And when, after this, there has been for a series of years an actual, open, and notorious exercise, unchallenged by the state, of the powers of a corporation, one who is sued on a note held by such corporation will not be permitted to question the validity of the incorporation as a defense to the action."

Again, the 1875 act reserved to Kansas jurisdiction to tax "railroad, bridge and other corporations." What did the legislature mean when it used those words?

We are guided by the presumptions that the legislature understood the meaning of the words it used and intended to use them, and that the legislature used the words in their ordinary and

common meaning. *Rogers v. Shanahan,* 221 Kan. 221, 223-224, 565 P.2d 1384 (1976). Further, when the 1875 act was passed, the legislature knew or was bound to know, of the existence of its other statutes. *Peters v. Peters,* 177 Kan. 100, 107, 276 P.2d 302 (1954). When the legislature chose the words "railroad, bridge and other corporations," it must be deemed to have been aware of the corporation laws then on the books (G.S. 1868, ch. 23, and amendments thereto). Those laws included provisions specifically concerning railroad corporations (G.S. 1879, ch. 23, art. 6) and bridge corporations (G.S. 1879, ch. 23, art. 19). They also included provisions specifically concerning other corporations, *e.g.,* macadam and plank road corporations (G.S. 1879, ch. 23, art. 7), telegraph corporations (G.S. 1879, ch. 23, art. 8), gas and water corporations (G.S. 1879, ch. 23, art. 12), and cemetery corporations (G.S. 1879, ch. 23, art. 15).

The statutory words should be treated as consciously chosen. We believe the legislature meant what it said, that it reserved to the State of Kansas jurisdiction to tax the property of *corporations,* whether railroad corporations, bridge corporations, or other corporations, located on the Fort Leavenworth reservation. In our view, the scope of the jurisdiction of the State of Kansas to tax the property of corporations reserved by the 1875 act is limited to jurisdiction to tax property owned by de jure and de facto corporations. The property at Fort Leavenworth belonging to AFCIA, an association that is neither a de jure nor a de facto corporation, does not fall within the reserved jurisdiction to tax. But, our inquiry is not concluded.

The County points to the definition of "corporation" found in our state constitution:

"The term corporations, as used in this article, shall include all associations and joint stock companies having powers and privileges not possessed by individuals or partnerships; and all corporations may sue and be sued in their corporate name." Kan. Const. art. 12, § 6.

Additionally, Kan. Const. art. 12, § 1 states:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

These two sections read together seem to define "corporation" as an association or joint stock company which upon compliance with law and by grant of the sovereign, the state, is conferred with

powers and privileges not possessed by individuals or partner-
ships, one of which is the power and privilege to exist as a
separate and distinct legal entity. Kan. Const. art. 12, § 2, bestows
one other privilege:

"Dues from corporations shall be secured by the individual liability of the
stockholders to the amount of stock owned by each stockholder, and such other
means as shall be provided by law; but such individual liability shall not apply to
railroad corporations nor corporations for religious or charitable purposes."

The County argues the organization and operation of AFCIA is
analogous to that of a Massachusetts Trust and because of that
AFCIA should be held to come within the reserved jurisdiction to
tax. In *Harris v. Oil Co.*, 110 Kan. 532, 204 Pac. 754 (1922), there
is language that both indicates possible error in our expression of
the constitutional definition of "corporation" and represents
support for the thrust of the County's argument. In *Harris* it is
said:

"Except for [art. 12, § 6] of the Kansas constitution relied upon in [*Lumber Co.
v. State Charter Board*, 107 Kan. 153, 190 Pac. 601 (1920)], it may be conceded
that 'Massachusetts trusts' are not to be classed as corporations. (See Note, 7
A.L.R. 612, 621, 628.) That section, giving a definition of the term corporation
which we have held to include voluntary trusts such as the defendant, reads:

" 'The term *corporations, as used in this article,* shall include all associations
and joint-stock companies having powers and privileges not possessed by indi-
viduals or partnerships; and all corporations may sue and be sued in their
corporate name.' (Art. 12, § 6.)

"In Idaho a somewhat similar constitutional definition has been held (one of the
three justices dissenting) not to include such organizations. (*Spotswood v. Morris,*
12 Idaho, 360.) The provision there interpreted, however, contains two very
significant words which are omitted from that of the Kansas constitution—those
which we italicize in the following copy of the section:

" 'The term "corporation," as used in this article, shall be held and construed to
include all associations and joint stock companies having or exercising any of the
powers or privileges *of corporations* not possessed by individuals or partner-
ships.' (Idaho Const., Art. 11, § 16.)

"The word 'corporations' in the italicized phrase obviously means corporations
in the general sense, not enlarged or modified by the definition in which it occurs;
otherwise the word would be defined in its own terms. The powers and privileges
of corporations as such, as the word is ordinarily used, may well be regarded as
those conferred by legislative act. That this feature of the matter influenced the
decision of the Idaho court is indicated by the language of the syllabus—'To
legally possess or exercise powers or privileges of corporations requires a sover-
eign grant.' When the Kansas constitution was adopted a provision like that of the
*constitution of Idaho, including the words* 'of corporations,' was contained in the
constitutions of New York (Constitution of 1846, Art. 8, § 3) and Michigan
(Constitution of 1850, Art. 15, § 11), with which the framers of our own constitu-

tion were presumably familiar. The Kansas provision was obviously derived from that of New York. Its omission of the words 'of corporations' must be regarded as intended to affect the meaning and give to it much the same force as though it read: 'The term corporations, as used in this article, shall include all associations and joint stock companies having powers and privileges not possessed by individuals or partnerships, whether or not such powers and privileges are of a character peculiar to corporations as the word is ordinarily used—that is, whether or not they result from a legislative grant.' It is quite obvious that the purpose was not to embody in the constitution the ordinary definition of the word corporations but to give to that word as used in the article of which the provision was a part a special and enlarged meaning. The kind of association there described is by the terms of the section itself authorized to sue and be sued. The definition so adopted is not necessarily to be applied to the word corporation wherever it is used in the statute; but where the subject matter makes it pertinent and within the reason of the legislation that is the natural course. As was pointed out in the Lumber Company case [Massachusetts trusts] have among other powers and privileges not possessed by individuals or partnerships those of continuous existence and exemption from personal liability. They enjoy practically all the advantages of ordinary corporations, and no reason is apparent why they should not be subjected to the same obligations and regulations." 110 Kan. at 534-535.

In partial response to the County's argument, AFCIA calls our attention to *Gilmer v. Kansas City West Land Co.,* 1 Kan. App. 2d 509, 571 P.2d 36 (1977), where there is found a synopsis of relevant Kansas case authority dealing with Massachusetts trusts.

"[The Kansas Business Trust Act, L. 1961, ch. 127] was the culmination of a long series of problems arising from the operation in this state of those hybrid business entities known as business trusts or, more commonly, 'Massachusetts' trusts. The court was repeatedly faced with determining whether they should be treated as corporations, partnerships, true trusts, or simply illegitimate creatures of whom the law should take no cognizance whatever. A few of our cases will illustrate those problems." 1 Kan. App. 2d at 511.

"Such cases demonstrate that a Massachusetts trust is not a true corporation, but has long been a recognized business entity with some but not all the attributes of a corporation. For lack of legislative recognition, however, from *Lumber Co.* [107 Kan. 153, 190 Pac. 601 (1920)] through the last *United Royalty* case [188 Kan. 443, 363 P.2d 397 (1961)] our court was required to fit a Massachusetts trust into the corporate mold, *at least for the purpose of public regulation.*" (Emphasis added.) 1 Kan. App. 2d at 513.

K.S.A. 17-2028, the definition section of the Kansas Business Trust Act, provides:

"(*a*) A 'business trust' is an unincorporated business association of the type which at common law was known as a 'common-law trust,' 'business trust,' or 'Massachusetts trust,' created by a trust instrument under which property is held, managed, administered, controlled, invested, reinvested, and operated by trustees for the benefit and profit of such persons as are or may become the holders of

transferable certificates evidencing beneficial interests in the trust estate, the holders of which certificates are entitled to the same limitation of personal liability extended to stockholders of private corporations for profit."

While the field for "investment" of trust funds by a Massachusetts trust is virtually unlimited (1 Kan. App. 2d at 515-516), the statutory definition of a "business trust" sets forth the present description of a Massachusetts trust.

We conclude it is not necessary that we now decide whether a Massachusetts trust is within the scope of the 1875 reserved jurisdiction to tax. If a Massachusetts trust is within the scope of the reserved jurisdiction, the County's argument is fatally flawed because the facts of record, which we have recapitulated in some detail, fail to establish that AFCIA is an unincorporated business organization meeting the definitional description of a Massachusetts trust. We see no need to specify the shortcomings in detail; they should be apparent to the reader. Included among them are no showing of a trust instrument; no showing of ownership of "trust property" held by trustees; the nonexistence of transferable beneficial interests, whether or not represented by certificates; and, recalling insurance is afforded to both members and non-members of the association and noting there is no showing all members are insureds, "distribution" of AFCIA's "profits" is by credits against premiums due and not by payment to members.

In conclusion, we hold the trial court did not err. The Board of Tax Appeals order was unreasonable, arbitrary and capricious. It was unlawful.

Affirmed.