No. 25,265.

J. E. HAMILTON, *Appellant*, v. FRED C. YOUNG and U. G. CHARLES, *Appellees*.

SYLLABUS BY THE COURT.

1. ASSOCIATION—*In Form a Massachusetts Trust—Possessing the Powers and Privileges Characteristic of a Corporation—A Legal Entity Distinct from the Persons Who Compose It.* An association, in form a Massachusetts trust, which, in the absence of the constitutional definition of a corporation (Art. 12, § 6), would constitute a trust and not a partnership, but which, according to the trust instrument, possesses powers and privileges characteristic of a corporation, is, by virtue of the definition, a corporation to the extent that it is a legal entity distinct from the persons who compose it.

2. SAME—*Promissory Note—Signed by Officers of Associations—Officers Not Personally Liable.* A negotiable promissory note was signed "The Victory Oil Company, by U. G. Charles, President. Attest: Fred C. Young, Secretary." The Victory Oil Company is an association of the character indicated in paragraph 1. Charles and Young were respectively its president and secretary, and were duly authorized to execute the note. *Held*, section

20 of the negotiable-instruments law (R. S. 52-220), exempts them from personal liability on the note.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed May 10, 1924. Affirmed.

*John Madden, John Madden, jr., J. T. Rogers,* all of Wichita, and *Dennis Madden,* of Topeka, for the appellant.

*A. L. Noble, W. A. Ayres, Hal M. Black,* and *C. A. McCorkle,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one to recover on a promissory note. The district court directed a verdict for defendants, on the pleadings and opening statements of counsel. Plaintiff appeals.

The petition alleged that Charles and Young executed and delivered to plaintiff their promissory note, which was due and unpaid. A copy of the note was made part of the petition. The note was in the ordinary form of a "We promise to pay" negotiable instrument, and was signed, "The Victory Oil Company, By U. G. Charles, President. Attest: Fred C. Young, Secretary." The answer alleged The Victory Oil Company is a common-law trust, created by an agreement and declaration of trust, for the purpose of taking title to real property, and producing, refining and marketing oil. A copy of the trust instrument was made part of the answer. It provides that legal title to property vests solely in five trustees, who have exclusive management and control of the trust enterprise and all its business affairs. The trustees have a collective name, "The Victory Oil Company." They are empowered to make and use a common seal, to adopt rules and regulations for government of the trust and conduct of its affairs, and to elect from their number a president, secretary, and treasurer, whose duties are the same as the duties of corresponding officers of corporations. The trustees are elected by majority vote of shares present at an annual shareholders' meeting, hold office for one year and until successors are elected and qualified, and may fill vacancies. Title and function pass to successors by the mere fact of election or appointment, and qualification. The trustees have power to borrow money on notes, bonds, or otherwise, have general authority to execute all forms of instruments in writing which they deem proper in conducting the trust business, and have power to fulfill all obligations and pay all

9—116 Kan.

liabilities properly assumed by them as trustees. The trustees were required to issue certificates of units to the number of 10,000, of no par value, evidencing aliquot parts of the trust estate, and to sell them as shares of corporate stock are issued and sold. The certificates are transferable, and records of certificates and transfers are kept, after the manner of corporate stock. In case of death or insolvency of a shareholder, his shares vest in his successor in interest, without right to an accounting or division of estate or profits. The trustees may declare and pay to shareholders dividends out of earnings. In all other respects the organization takes the form of a corporation for profit. The agreement provides for liability of the trust estate for debts, for nonliability of shareholders to assessment, and for nonliability of trustees and shareholders personally on account of powers executed or obligations created or assumed by the trustees in their official capacity. The trust agreement may be altered or amended, except as to liability of trustees and shareholders. The term of the trust is twenty-one years. At the end of the term, the trustees shall wind up the trust, liquidate its assets, and distribute the proceeds among shareholders.

The answer alleged that, when the note was executed, Charles was president and Young was secretary of The Victory Oil Company; that, as such officers, they were authorized to execute the note on behalf of The Victory Oil Company as its obligation; and that they executed the note by the authority and in the capacities stated. The reply was an unverified general denial, and counsel for plaintiff admitted execution of the trust instrument, in connection with his opening statement.

On the face of the note, defendants are not liable. *Prima facie,* the name "The Victory Oil Company," imports the name of a corporate body. *Allen v. Hopkins,* 62 Kan. 175, 61 Pac. 750; *The State v. Toliver,* 109 Kan. 660, 667, 202 Pac. 99.) The signature is the signature of the corporation, affixed by its president and attested by its secretary, on its behalf. *Primā facie,* the execution was authorized. (*Town Co. v. Swigart,* 43 Kan. 292, 23 Pac. 569.) Without the negotiable instruments law, nonliability of Charles and Young appeared on the face of the note, and by virtue of that law they are not liable.

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the

Hamilton v. Young.

mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." (R. S. 52-220.)

How did the answer affect the matter?

Plaintiff reads the trust articles, and reaches the correct conclusion that the persons associated under the name "The Victory Oil Company" are not partners. While the shareholders may elect trustees, and may consent to a change in the articles of association which does not alter their liability or the liability of the trustees, they have no control over the trust enterprise. The trustees control. (*Lumber Co. v. State Charter Board,* 107 Kan. 153, 190 Pac. 601.)

In an interesting article, "The Mysterious Massachusetts Trusts," in the American Bar Association Journal for December, 1923 (Vol. 9, No. 12, p. 763), William W. Cook says the test of control is unsound. He is of the opinion that, if the organization carry on an active business, those who take profits ought to be liable to creditors, as partners, for debts and losses. When persons merely furnish capital for an active business enterprise, to trustees who have full legal title and absolute management and control, this court is unable to see that they should be held personally liable to creditors who have direct resort to the trust estate, any more than holders of corporate stock entitled to dividends out of profits should be personally liable to creditors.

Since a partnership was not formed, plaintiff concludes the trust instrument created a pure trust, and that the trustee of such a trust is always liable on his contracts, even if he sign as trustee, unless he stipulate that the other party to the contract shall look solely to the trust estate, or otherwise lawfully restrict his liability in the contract itself. (*Wells-Stone Mercantile Co. v. Grover,* 7 N. D. 460, 41 L. R. A. 252.) Conceding for present purposes that a trust of the ancient kind, which courts of equity have dealt with for centuries, was created, the very modern negotiable-instruments law specifies how personal liability on a negotiable instrument may be precluded. The trustees of a so-called Massachusetts trust may adopt a name for business purposes, just as individuals, partnerships and corporations may do so. (*Rand v. Farquhar,* 226 Mass. 91.) Promissory notes may be given in the collective name. Those authoritatively using the collective name may indicate that they are not binding themselves personally. If they do so, conformably to the statute, they are not individually liable.

If in this instance the note had been signed "The Victory Oil Company, by U. G. Charles, President, officially, not personally. Attest: Fred C. Young, Secretary, officially, not personally," the individuals would not be bound. The words "by" and "attest" having been employed in the signatures, commercial usage and common sense imply the words "officially and not personally," and the court declares such to be the law of this state. If there were any ambiguity about it, parol evidence would be admissible, as between the original parties, to show the capacity in which Charles and Young signed. (*Bank v. Trust Co.*, 107 Kan. 700, 193 Pac. 316.) There is, however, no ambiguity. Under all the authorities cited by plaintiff, a trustee may stipulate that he shall not be personally liable. The negotiable-instruments law tells how the stipulation may be expressed in a promissory note, and we have here a plain case of a note in which the trustees affixing and attesting the trust's signature, excluded personal liability.

Plaintiff says a trustee always acts as principal, there is no person, natural or artificial, for whom he can be agent, a trust estate cannot promise, and consequently, any obligation of the trustee is a personal obligation. Pressed to its logical conclusion, this doctrine would forbid a trustee from contracting that he shall not be personally liable, something which he may always do. The statute, however, does not stop with the relation of principal and agent in the technical and legal sense, but includes relations involving distinction between capacities.

In business a person will always act in one of two capacities: first, in his personal capacity, whereby he binds himself and his own estate; and second, the capacity in which he stands for some civil interest other than his own individual interest. There was no object in inserting the words "or in a representative capacity" in the statute, unless something other than the strict relation of principal and agent were meant. There could have been no purpose to include, for example, an executor of a will, who represents creditors, devisees, legatees, and distributees, and to exclude a testamentary trustee, who represents beneficiaries of the trust; and a trustee in the proper exercise of his authority acts in a representative capacity, within the meaning of the negotiable-instruments law. (*Megowan v. Peterson*, 173 N. Y. 1 [trustee for creditors]; *American Trust Co. v. Canevin*, 184 Fed. 657 [Roman Catholic Bishop, trustee of property

Hamilton v. Young.

in his diocese, for his congregation]; *Wilson v. M. E. Zion Church,*
138 Henn. 398 [trustee of unincorporated religious society].)

There are trusts and trusts. In this instance we are not concerned
with the conflict in theory respecting methods of reaching a trust
estate for satisfaction of obligations incurred by trustees. The trust
instrument itself provides that creditors shall look to the trust
estate for satisfaction of claims, and the trustees having contracted
against personal liability, plaintiff had a direct remedy in ordinary
course of law against The Victory Oil Company to enforce pay-
ment of his note. The result is that, on plaintiff's theory of a pure
trust, he cannot recover on the note against Charles and Young
as individuals.

In the case of *Adams v. Swig,* 234 Mass. 584, the trustees of the
National Realty Company, a Massachusetts trust, executed a ne-
gotiable promissory note in the following manner: "National Realty
Co. by Simon Swig, Edward L. McManus, Robert Luce, Louis
Goldstein, Trustees." The trustees were sued on the note, in an
action identical in form with the one against Charles and Young.
One defense presented by the answer was substantially the same
as the defense made here. There was a trial, in which plaintiff ad--
mitted the trustees were acting for the National Realty Company.
The trustees offered in evidence the trust agreement, showing exist-
ence of the realty company, and their authority by virtue of the
agreement to sign the note. The offer was refused. The court re-
fused to rule "(1) That the signature, 'National Realty Co. by
Simon Swig, Edward L. McManus, Robert Luce, Louis Goldstein,
Trustees,' is the signature of the National Realty Company and is
not the joint signature of the individual defendants;  .  .  .  and
(4) The defendants cannot be held personally responsible in these
proceedings against them 'as they are trustees of the National
Realty Company;'  .  .  ." (p. 587.) The court found for plain-
tiff, and the case was reported to the local court of proper appellate
jurisdiction, which dismissed the report. On appeal to the supreme
court the order was reversed. In the opinion the court quoted the
negotiable-instruments law, and said:

"In the case at bar, on its face the note purports to bear the signature of
the National Realty Company by the defendants as trustees. Perforce of the
statute it follows that the defendants are not individually liable thereon if
the National Realty Company existed and the defendants had authority to
act for that company.  .  .  .  Parol evidence was admissible to prove either
or both of these issuable facts.  .  .  .

"The agreement of trust under seal and executed by the defendants, . . . and other subscribers, created a voluntary association with the collective title National Realty Company. . . . The associate name was signed to the note in suit by the trustees, who are the defendants, under the provision of the trust agreement empowering the trustees to issue notes or bonds, . . . '

"It follows that the note was signed in the name of a disclosed, existent principal. . . ." (pp. 587, 588.)

There was another defense to the action, which need not be considered, and which did not affect the portion of the opinion of the court quoted above.

Plaintiff says the statute of Massachusetts recognizes such a trust as the realty company as a legal entity. There is a law of this state which recognizes The Victory Oil Company as a legal entity, and it so happens the law is the constitution itself. In the article on corporations appears the following:

"The term corporations, as used in this article, shall include all associations and joint-stock companies having powers and privileges not possessed by individuals or partnerships; and all corporations may sue and be sued in their corporate name." (Art. 12, § 6.)

When it was conceded, for momentary purposes, The Victory Oil Company is a trust, attention was confined to what the association would be, without regard to any statute or equivalent of a statute applying to it. The quoted section of the constitution says "all associations," etc. It would be idle to debate whether the trustees and shareholders of The Victory Oil Company formed an association, within the meaning of the section. The term appears to have been employed in its usual and ordinary sense, which throughout the United States imports a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. (*Hecht v. Malley*, Adv. Op. U. S. Sup. Ct., May, 1924.) Looking again at the trust instrument, we discover it provides for an association having many powers and privileges not possessed by individuals and partnerships. Therefore, the notion of a simple trusteeship, governed by familiar principles of equity, is not adequate as a basis for decision of the controversy.

The association is not one in which the associates set out to form a corporation, and failed to do so, either by not going forward, or on account of some defect in the organization proceedings. They never had any intention to form a corporation, and never made any effort to do so. They are entitled to have the trust instrument considered as it is, and are entitled to benefit of its pro-

visions so far as law and public policy permit. The instrument must, however, be judged in the light of the law, and the constitution classifies the association with corporations.

Classification of the association as a corporation does not mean, of course, that it is to be treated in all respects and for all purposes as though it had obtained a charter in the regular way. The constitution grants no corporate privilege, but classification of certain associations with corporations requires that, so far as corporate analogy may be lawfully indulged, those associations are to be deemed corporations. The analogy may or may not carry us far. The court has already held that service by publication may be made on a Massachusetts trust in its collective name as a foreign corporation (*Harris v. Oil Co.*, 110 Kan. 532, 204 Pac. 754), and has held that such an association is subject to the blue-sky law. (*Lumber Co. v. State Charter Board*, 107 Kan. 153, 190 Pac. 601.) The syllabus of the Harris case reads as follows:

" 'A Massachusetts trust' is a corporation within the meaning of that word as defined in section 6 of article 12 of the Kansas constitution as including 'all associations and joint-stock companies having powers and privileges not possessed by individuals or partnerships,' and as used in statutes the subject matter of which makes the definition pertinent and within the reason of the legislation." (¶ 1.)

In the opinion it was said:

"It is quite obvious that the purpose was not to embody in the constitution the ordinary definition of the word corporations but to give to that word as used in the article of which the provision was a part a special and enlarged meaning. The kind of association there described is by the terms of the section itself authorized to sue and be sued. The definition so adopted is not necessarily to be applied to the word corporation wherever it is used in the statute; but where the subject matter makes it pertinent and within the reason of the legislation that is the natural course." (p. 535.)

The fundamental concept of a corporation is that it has existence distinct from the persons composing it. It is a legal entity, which may act on its own account, through organs of activity commonly called trustees, directors, officers, and agents. Since The Victory Oil Company has the constitutional characteristics, it is a corporation which may be a disclosed principal, on whose behalf its president and secretary, duly authorized, may execute a negotiable instrument without personal liability, by complying with the negotiable-instruments law. Applied to the facts, this conclusion determines the case in favor of Charles and Young.

The judgment of the district court is affirmed.

.HARVEY, J. (concurring specially): I concur in the result because of the provisions of the negotiable-instruments law (R. S. 52-220), but I am not convinced that a so-called "Massachusetts Trust" or "common-law trust" should in this state ever be regarded as a corporation.