## BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N v. SCULLY.
### No. 1533.

Circuit Court of Appeals, Tenth Circuit.

Sept. 7, 1937.

Clarence A. Brandenburg, of Denver, Colo. (Stanley C. Brandenburg, of Denver, Colo., on the brief), for appellant.

Horace H. Hindry, of Denver, Colo. (Guy K. Brewster and Hayes R. Hindry, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The appellant as plaintiff and the appellee as defendant in the court below will be referred to herein in the order in which they appeared in that court.

Plaintiff instituted suit in that court to recover from defendant on a promissory note. The defendant interposed a demurrer which was sustained. The plaintiff having declined to plead further, and judgment having been rendered dismissing the complaint, this appeal is prosecuted to review same.

A. G. Bartlett, Inc., owner otherwise referred to as "seller," sold and conveyed a tract of land in Los Angeles county, California, to Margaret Douglass, otherwise referred to as "buyer," who thereupon ex-

ecuted and delivered to said Bartlett, on account of the purchase price, her notes aggregating $1,100,000 secured by mortgage upon the purchased property.

Thereafter Margaret Douglass, the said buyer, conveyed the land subject to such mortgage to the Merchants National Trust & Savings Bank of Los Angeles, California, and at the same time the said Bartlett assigned to such bank the notes of the said Margaret Douglass, and the mortgage securing the same. Thereupon, on July 28, 1927, and as a part of the same transaction, the said Bank, as trustee, the said A. G. Bartlett, Inc., denominated as "seller," and the said Margaret Douglass, denominated as "buyer," executed a so-called subdivision trust agreement, which formed a part of plaintiff's complaint.

The said agreement authorizes the trustee "acting for the buyer" to subdivide the property into lots and to subscribe and record a map of the subdivisions, designating streets and alleys, and to consent to the abandonment of any street or alley, in accordance with maps prepared by the buyer, and provides that "all expenses of said subdivision or subdivisions and the improvements thereon shall be borne and paid by the Buyer," and also recited that the trustee "hereby acknowledges, certifies, and declares that it holds and will continue to hold the above described real property, and the said mortgage note and mortgage interest, for the purposes and upon the terms and conditions and provisions hereinafter specifically set out, without merger of the legal title to the said real property with the mortgage lien created by said mortgage, each being held separately by the Trustee."

In paragraph 2 it is provided that the trustee shall have authority to execute contracts for sale and to sell lots "for such prices as may from time to time be fixed by the Buyer," the minimum sale price to be fixed by the buyer, with the right on the part of the buyer to reduce such prices at will, under certain limitations.

Paragraph 4 provides that the contracts of sale and deeds are to be executed by the trustee "subject to such restrictions, conditions, reservations, and rights of way as shall be fixed by the buyer."

By paragraph 5, the buyer is given the privilege to retain possession of the property and "have management and control thereof as long as there is no default hereunder" subject to the provisions of the trust, and that the buyer may, for the purpose of making sale of lots, select and employ such agents and subagents as it may deem fit, "but such agents or subagents so employed by the buyer shall be construed to be the agents of the buyer and not that of the trustee or seller."

By paragraph 6 the buyer covenants to pay taxes, assessments of every nature levied or assessed against the trust property and "to pay for all street work or other improvements done or made upon said property," and "all of the expenses incurred in connection with the execution, acceptance, operation or termination of this trust payable by the buyer" as therein provided, and all of the trustee's fees and charges.

By paragraph 8, buyer is required to pay the cost of certificates of title.

Paragraph 9 is as follows:

"In the event that the beneficial interests of the Buyer hereunder become vested by assignment or otherwise in the following named persons, either in whole or part of such beneficial interests and whether or not such part not held by the following named persons continues to be held by said Buyer, Margaret Douglass, or by other successors or assignees, to-wit, in Frank R. Strong, George W. Dickinson, A. Z. Taft, Jr., Thomas D. Barnett, Walter R. Wheat, W. E. Dimmick and George L. Reynolds, then upon the happening of any such contingency and the said persons above-named becoming vested with any part of said beneficial interest thereafter said above-named persons shall constitute and be a committee in full charge of all matters connected with the Buyer upon behalf of this trust and it is expressly understood and agreed that thereafter the written instructions of any four of said committee directed to said Trustee in regard to any matters in which the said Buyer shall have the right to direct said Trustee under the terms of this trust agreement, shall absolutely be binding upon said Trustee and said Trustee in all respects where said Buyer under the terms hereof shall have the right to direct and instruct said Trustee, shall act as directed and instructed by any four of said committee.

"It is understood and agreed that this power given to said committee as herein provided is irrevocable and shall exist for the full term of this trust indenture, and it is specifically understood and agreed that if said members of said Committee acquire any of the Buyer's beneficial interest under

this trust it will be done so in consideration of this power given and granted to said Committee and it is specifically understood and agreed that this shall in all respects be binding upon the present buyer, Margaret Douglass, and it is further agreed that if any assignments or transfers are made by the said Margaret Douglass or any of said Buyer's beneficial interests to any persons other than said Buyer, Margaret Douglass, and said Committee that said transfer and assignment shall be and is in all respects subject to terms and provisions of this paragraph Ninth of this trust indenture, and such assignee or successor shall in all respects be bound hereby.

"It is specifically understood and agreed that the power and right given to said Committee as herein provided is absolute and unrestricted and that no holder of any part of the Buyer's beneficial interest under this trust or said present buyer, Margaret Douglass, shall have any right in any respect to question or disturb any decision, direction or instruction given by four of said Committee to said Trustee and said Trustee shall disregard each and every protest, demand, instruction or direction of any holder of any part of the beneficial interest of the buyer hereof.

"It is understood and agreed that any four of said Committee shall have the right to fix all prices at which any property covered by said trust shall be sold, subject only to the terms of this trust agreement as to minimum sales prices and release prices, to determine the character of improvements thereon and the cost thereof, to determine all expenditures that shall be made for and on behalf of the Buyer under said trust and in connection with said trust property, and to incur any and all indebtedness in and about said trust and said trust property and the Buyer's interest thereunder, as any four of said Committee shall determine to be proper and right, and shall have the right to determine upon any sale of the whole of said property if it seems expedient to sell the whole thereof instead of by subdivision. Any four of said Committee are hereby given the right and power to direct said Trustee in and about the manner and disbursement of all funds to be paid to the Buyer under this trust agreement.

"In enumeration of these specific powers it is not in any way intended to and does not limit the general provisions of this agreement, to-wit, that any four of said Committee shall have and are hereby given the irrevocable right and power to manage, conduct, carry on or operate in every manner the Buyer's interest under this trust and to direct and instruct the Trustee in every respect under the terms of this agreement in which the Buyer has the right to direct said Trustee. Said Trustee shall act upon the directions and instructions of any four of said Committee above-named, and it is agreed that in and when so acting any such action upon the part of the Trustee shall conclusively bind Buyers as beneficiaries hereunder and shall bind the holder of every and any part of the beneficial interest of the Buyer under the terms of this agreement. It is understood and agreed that the members of said Committee are only qualified to act in so long as they are the holders of a part of the beneficial interest of the Buyer under the terms of this trust. In the event any member of said Committee is no longer the holder thereof, then he shall no longer be entitled to his place upon said Committee and shall have no further power under the terms of this agreement. In the event any member of said Committee is disqualified by reason of his no longer holding his part of the Buyer's beneficial interest under this trust or by reason of death or inability to act or disqualification or incompetency of any character, then a successor shall be immediately chosen and such successor shall be selected on the written order of the holders of beneficial interest constituting a majority in value of the total beneficial interests of the successors of the buyer hereunder and when such successor has been selected in that manner he shall then be one of said Committee and shall thereafter have all of the powers and rights and the same shall be irrevocable, given to the members of said Committee as herein provided.

"By the word irrevocable as applicable to any one member of said Committee as used under this paragraph of this trust indenture, it is meant said member of said Committee shall have the rights and powers hereunder given, except and unless said Committee member shall be disqualified by reason of no longer holding any part of buyer's beneficial interest hereunder or shall be unable to act or shall die or shall become incompetent or shall resign. Upon the happening of any such contingency, then, as above provided, a new member shall be immediately selected to take the place of any vacancy created.

"It is understood and agreed that it is the distinct intention and purpose hereof that no holder of any part of the Buyer's beneficial interest hereof shall have the right to question the action of said Committee taken in pursuance of this paragraph, shall have no right under any circumstances to prevent the action directed or instructed by said Committee and shall have no right to recall or dismiss any Committee member and shall have no right to take away or lessen in any degree the rights and powers hereby irrevocably given, granted and transferred to said Committee.

"In so far as it shall be proper or necessary, the Buyer and all persons hereafter holding in any way as successor assignee any of Buyer's beneficial interest under this trust, do hereby appoint said Committee in the manner herein specified as attorneys in fact and with full power of attorney to carry out all of the terms and provisions of this paragraph.

"It is understood and agreed that it is the intention and purpose hereof that the said Buyer shall have the right to lease said premises or any part thereof, said lease to be subject in all respects to the mortgage given to the Seller as herein described. Said leases to be on such terms, conditions and for such amounts and rentals as shall be determined by the Committee in the manner herein prescribed and said Committee shall have the sole right to determine these matters and the Trustee shall make and execute all leases covering all or any part of said property (subject at all times to said mortgage) as directed by any four of said Committee, and the rentals receivable under said lease or leases shall be paid to the Trustee and credited to the account of the Buyer under said Trust and disbursed by the Trustee on behalf of the Buyer upon the order of any four of said Committee.

"In the event that there is any vacancy on said Committee and it is filled in the manner herein prescribed, then the appointment of said new committeeman shall be in writing and such writing shall be filed with the trustee and after the same has been filed with the Trustee said Trustee shall recognize said new committeeman under the terms and purposes of this paragraph."

In said paragraph 9, it is provided that when certain named persons acquired beneficial interests, they should constitute and be a committee "in full charge of all matters connected with the Buyer on behalf of this trust," and their directions, or the directions of any four of them, "shall be absolutely binding upon said trustee and said trustee in all respects where said Buyer under the terms hereof shall have the right to direct and instruct said trustee, and shall act as directed and instructed by any four of said committee," and that the power so granted should be irrevocable, and should be binding not only upon the Buyer, Margaret Douglass, but: "It is further agreed that if any assignments or transfers are made by the said Margaret Douglass or any of said Buyer's beneficial interests to any persons other than said Buyer, Margaret Douglass, * * * that said transfer and assignment shall be and is in all respects subject to the terms and provisions of * * * paragraph Ninth of this trust indenture, and such assignee or successor shall in all respects be bound hereby."

Said paragraph further provides that any four of said committee "shall have the right to fix all prices at which any property covered by said trust shall be sold, * * * to determine the character of improvements thereon and the cost thereof, to determine all expenditures that shall be made for and on behalf of the Buyer under said trust and in connection with said trust property, and to incur any and all indebtedness in and about said trust and said trust property and the Buyer's interest thereunder, as any four of said committee shall determine to be right and proper."

Said paragraph further provides that the grant of specific powers to committee should not limit the general provisions, namely, that any four of "said Committee shall have and are hereby given the irrevocable right and power to manage, conduct, carry on or operate in every manner the Buyer's interest under this trust and to direct and instruct the Trustee in every respect under the terms of his agreement in which the Buyer has the right to direct the Trustee. Said Trustee shall act upon the directions and instructions of any four of said Committee above-named, and it is agreed that in and when so acting any such action upon the part of the Trustee shall conclusively bind Buyers as beneficiaries hereunder and shall bind the holder of every and any part of the beneficial interest of the Buyer under the terms of this agreement."

Said paragraph further provides: "Insofar as it shall be proper or necessary, the Buyer and all persons hereafter holding in any way as successor assignee any of the

Buyer's beneficial interest under this trust, do hereby appoint said Committee in the manner herein specified as attorneys in fact and with full power of attorney, to carry out all of the terms and provisions of this paragraph."

By paragraph 11, provision is made for the sale of the beneficial interests in the event of default in the payment of the amounts agreed to be paid by the owners thereof, with the specific provision that "said Buyer shall be liable for and hereby binds herself to pay the deficiency."

By paragraph 14, provision is made concerning defaults and authorizing sale in the event "any buyer fails to pay his or her proportionate share of any sum whatsoever properly payable in connection with this trust by the buyers hereunder."

The complaint, after declaring in substance the foregoing facts, alleges that the seven persons named in the trust agreement *had acquired and were the owners and continued to be the owners of beneficial interests under the trust at all the times material herein;* that such persons thereupon *became the committee mentioned in said trust agreement in charge of all matters pertaining to said trust on behalf of the buyer and her successors in interest;* that as provided by paragraph ninth of said trust agreement, *such committee possessed the right to determine the character of improvements to be made upon the trust property, the cost thereof, to determine all expenditures that should be made in connection with such trust property and to incur any and all indebtedness in and about the trust and the trust property;* that immediately following the execution of the trust agreement, Margaret Douglass sold, conveyed, and transferred by written instruments and with the approval of the trustee as in the trust provided, beneficial interests in said trust; that the defendant acquired and became the owner of a fractional interest pursuant to and in the manner prescribed by the trust agreement; and that the fractional interests so sold and assigned, including the interest sold and assigned to the defendant, represented the entire beneficial interest of said Margaret Douglass in said trust.

It is further declared in the complaint that the beneficiaries collectively were at all times known and referred to as the Bartlett Syndicate, and that such name was the one commonly used by all beneficiaries and other persons dealing with or connected with said beneficiaries as designating said beneficiaries collectively and the association comprising such beneficiaries collectively, and that in the prosecution of the business of the association, consisting of the owners of the beneficial owners and in their behalf the committee adopted and used the term or name of "Bartlett Syndicate."

Further allegation is that on or about the 15th day of April, 1931, the beneficial owners under said trust, including the defendant, constituting an association as in said declaration of trust provided, acting by and through their agent, the committee appointed by said declaration of trust, and by the name of Bartlett Syndicate, being the name adopted by said committee and used by it in the transaction of the business of said trust, for and on behalf of the owners of the beneficial interests thereof, and for a good and valuable consideration, made, executed, and delivered to the plaintiff their promissory note for $37,822.09 as set forth in the complaint.

Allegation is that the note was for moneys loaned and advanced by the plaintiff to the said association of individuals, including the defendant, collectively owning the entire beneficial interest in said trust, moneys in excess of $37,822; that at the time the said promissory note was made, executed, and delivered to the plaintiff, the moneys then owing and unpaid from said defendant and his associates to plaintiff on account of said loans and advances totaled $37,822.09, said promissory note having been given by the defendant and his associates for said indebtedness, and that all of the moneys were so loaned and advanced by plaintiff alleged, to said defendant and his associates for the purpose of, and used for the purpose of protecting, preserving, and maintaining the property described in said declaration of trust, and that the uses for which said moneys were borrowed from the plaintiff and for which said moneys were applied and for which said promissory note was given were, to wit, the payment of prior liens against the property described in said declaration of trust and interest thereon, including taxes upon said property, and the improvement of said property, and the expenses of said trust, as by said declaration of trust authorized.

As to whether the court erred in sustaining the demurrer to the complaint and rendering judgment against plaintiff and in favor of the defendant, the contract and transaction out of which this action arises was made and entered in and took place in the

State of California and land covered by the mortgage is located in the State of California, and the so-called trust agreement and the trust being a so-called, in that state, subdivision trust.

After its execution, as alleged, the so-called "buyer," Margaret Douglass, conveyed and transferred the entire beneficial interest in the trust to various persons. The word "buyer," frequently used herein, and as the trust agreement provides, includes not only Margaret Douglass, the original buyer, but also her successors in interest.

It is specifically provided in paragraph 9 and agreed that the power given to the committee "shall in all respects be binding upon the present Buyer, Margaret Douglass, and it is further agreed that if any assignments or transfers are made by the said Margaret Douglass of any of said Buyer's beneficial interests to any persons other than said Buyer, Margaret Douglass, and said committee, that said transfer and assignment shall be and is in all respects subject to terms and provisions of this paragraph nine of this trust indenture, and such assignee or successor shall in all respects be bound hereby."

The determination of the amount of expense to be incurred, the nature of such expenses, the prices to be charged for lots sold, what restrictions, conditions, reservations, and rights of way should be contained in deeds for lots sold, the cost of improvements, the possession of the property, and the "management and control thereof" until default occurred, were all reserved to the "buyer" and her successors in interest of whom the defendant is one.

That the holders of beneficial interests therein would be numerous was contemplated. That the many duties to be performed and the important powers to be exercised, which were reserved to the beneficiaries, it was thought could not well be performed and exercised by a group consisting of a large number of beneficiaries. The assembling of all such persons as often and as promptly as necessary to efficiently obtain major action on their part with respect to the management of the trust property would not be reasonably practicable. To meet this situation and to secure persons competent for the purpose, a group of seven representative men were selected when the instrument was executed and named therein, the committee to be effective when the persons so named became owners of such frac-

tional beneficial interests, the allegation being that they did so become owners of beneficial interests. Under the demurrer, such allegations are taken as true. 'A committee was thus constituted under such allegations as "in full charge of all matters *connected with the buyer* upon behalf of this trust" with power to direct the trustee with respect to all matters concerning which the buyer, in her own behalf and on behalf of her successors in interests, reserved such right.

In addition to such general power to exercise on behalf of the beneficiaries the powers reserved to them was an enumeration of specific powers, but these powers, the trust provides, should not limit the general powers granted. Among the specific powers so granted to the committee, acting as agents of the beneficiaries, to that end, appointed and constituting the committee "as attorneys in fact and with full power of attorney to carry out all the terms and provisions of this paragraph nine," it was given power *"to incur any and all indebtedness in and about said trust and said trust property and the buyer's interest therein, as any four of said committee shall determine to be proper and right."* (Italics mine).

As to the trustee, its powers were limited. It did not possess the power to borrow money for trust purposes. Possession of the trust property with broad powers with reference thereto, and power to direct the trustee with respect to the management of the trust property, were reserved to the beneficiaries. For convenience, the powers so reserved to the beneficiaries, by express agreement, were in turn vested in a committee, all beneficiaries and chosen from their number, to act in their behalf. This action is on a note given by the committee so appointed, pursuant to specific power granted to that end, for money borrowed and used for the benefit of the trust estate, and for which the buyer and her beneficiary or successor in interest were bound and liable.

The defendant is a beneficiary under the trust, in legal effect a successor in interest to the buyer, having agreed to be bound by the provisions of the trust agreement, and borrowing money through the committee, his agent, for use in the improvement of the property in which he was part owner.

On or about December 8, 1928, the banking and trust business and the property and assets of the Merchants National Trust & Savings Bank of Los Angeles were trans-

ferred to the Bank of America of California. On November 1, 1930, the Bank of Italy National Trust & Savings Association, a national banking association, and the said Bank of America of California, merged under the name of Bank of America National Trust & Savings Association, plaintiff, and it was to this successor bank that on April 15, 1931, the said managing committee acting through Frank R. Strong and George L. Reynolds, two of the members, executed and delivered to the Bank of America National Trust & Savings Association (plaintiff) its promissory note for $37,822.09, due October 13, 1931, with interest from date at 6 per cent. per annum, at the same time the managing committee executing a collateral agreement to secure such note.

The defendant, Herbert J. Scully, by written assignment and with the written approval and consent of the Merchants National Trust & Savings Bank of Los Angeles, and in accordance with the declaration of trust, acquired on October 27, 1927, a 153/1000 proportionate share of the beneficial interest vested in the buyer, and owned and retained by him, there remaining due and unpaid on said note, after credited payments heretofore made, the principal sum of $15,127.59 with interest on $33,000 from April 7, 1933, at 6 per cent. per annum.

The money advanced by the Bank of America National Trust & Savings Association (plaintiff) on such promissory note was used by the committee for the purpose of protecting, preserving and maintaining the property described in the declaration of trust, to wit, payment of prior liens against the property, costs of improvement, and expenses of the trust as authorized therein.

The question is whether the managing committee were trustees for the use and benefit of the holders of beneficial interests under conditions that would relieve such holders from personal liability on obligations created by the managing committee, or whether they were agents of the holders of beneficial interests and authorized to incur obligations binding such holders.

■ The legal title to the property was transferred to the bank as trustee. The equitable title was vested in the holders of beneficial interests, including the members of the managing committee. No trust estate was vested in the members of the managing committee. An essential of an express trust is a trust res, the legal title to which is vested in the trustee. 65 C.J. p. 231, § 21; p. 235, § 25; p. 308, § 74.

■ In Otoe County National Bank v. Delany (C.C.A.8) 88 F.(2d) 238, 246, it is said: "From the authorities consulted and hereafter referred to it seems that in order to create a trust which exempts the beneficial owners of the property from liability for the debts contracted by the trustee in his official capacity, the latter must have the legal title and the exclusive right of control and management of the trust property for a term, or for the accomplishment of a definite purpose. It must be made to appear that during that time the cestui que trust can exercise no power over the property except to receive the benefits and insist upon the execution of the trust agreement according to its terms."

■ The trustee was not vested with complete power of management in his discretion free from control of the "buyer" and her successors in interest, "owners of beneficial interests," its power being narrow in scope and ministerial in character. Custody and management in practically every essential respect are reserved to the owner (buyer) and others who thereafter acquired beneficial interests. That included mapping and platting, designating streets and alleys, abandonment of streets and alleys, determining what lots should be sold and fixing the prices at which sales should be made, reduction of prices within the limits of the trust, determining the kind and character of improvements to be made and the payment of all expenses thereof, payment of taxes and expenses, and the incurring of debts in the administration of the trust.

The reservation of these vital and essential rights created the relation of a partnership among the owners of beneficial interests. It was not a true trust. Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949; Otoe County Nat. Bank v. Delany, supra; Case v. McConnell & Forrester (Cal.App.) 37 P.(2d) 190; Id., 5 Cal.App.(2d) 688, 44 P.(2d) 414; Goldwater v. Oltman, 210 Cal. 408, 292 P. 624, 71 A.L.R. 871; Williams v. Inhabitants of Milton, 215 Mass. 1, 102 N.E. 355; Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554; Schumann-Heink v. Folsom, 328 Ill. 321, 159 N.E. 250, 58 A.L.R. 485; Frost v. Thompson, 219 Mass. 360, 106 N.E. 1009; Home Lumber Company v.

Hopkins, 107 Kan. 153, 190 P. 601, 10 A.L. R. 879; Hamilton v. Young, 116 Kan. 128, 225 P. 1045, 35 A.L.R. 496; Fletcher on Corporations, vol. 16, p. 1115, § 8230.

Contention on part of appellee that the committee having had and exercised complete control and management of the property, and that the owners of beneficial interests having been denied such control and management, defendant is not liable on the note. The relation of trustee and cestuis que trust did not exist between the committee on the one hand, and the owners of beneficial interests on the other. The committee was a named group of owners of beneficial interests to exercise control and management for all owners, being a representative group of the whole. The declaration of trust expressly provided that the committee was the agent and attorney in fact for the entire owners of interest. The creation of the committee and the vesting of such authority in it did not constitute a true trust without liability on the part of the owners of beneficial interests for the debts incurred in the administration of the trust.

The committee was expressly authorized by the declaration to incur debts in the administration of the trust, in addition to certain fixed liabilities. The debt in question was incurred under such rule.

The judgment of the lower court is reversed and the cause remanded, with directions to overrule defendant's demurrer.