(571 P.2d 36)

No. 48,340

BEN S. GILMER, *et al.*, as Trustees of TRI-SOUTH MORTGAGE INVESTORS, *Appellants*, v. KANSAS CITY WEST LAND COMPANY, INC., *et al.*, *Appellees.*

Opinion filed August 5, 1977.

*Paul Hasty, Jr.,* and *Richmond M. Enochs,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for the appellants.

*Edward H. Powers, Sr.,* of Kansas City, Kansas, and *Robert E. Fabian,* of McAnany, Van Cleave & Phillips, of Prairie Village, for the appellees.

Before HARMAN, C.J., FOTH and SPENCER, JJ.

FOTH, J.: The basic issue in this case is whether a foreign business trust must qualify to do business in this state if its only activity here is to lend money secured by a mortgage on Kansas real estate. The trial court found that the foreign business trust operated by plaintiffs was required to qualify, and restrained further proceedings in this suit to foreclose a mortgage on Kansas real estate until it did so. Plaintiffs have appealed from that ruling, and the defendants have cross-appealed from the court's refusal to dismiss the suit altogether.

Plaintiffs are trustees of Tri-South Mortgage Investors, a business or "Massachusetts" trust having its principal place of business in Georgia. On June 30, 1972, it lent $1,300,000.00 to the

defendant Kansas City West Land Company, Inc., a Kansas corporation, secured by a mortgage on some 33 acres of land in Wyandotte county. This action was filed June 5, 1975. The petition alleges a breach of the mortgage agreement by failure to pay interest due on August 11, 1974, and seeks foreclosure and judgment for the full principal amount plus accrued interest.

In addition to Kansas City West, the mortgagor, several individuals were named as defendants. As to three, liability was asserted on the basis of their personal guarantees of the loan. Others were named as stockholders, officers or directors, and in some cases as spouses of such interested parties. As to the non-guarantor individuals, liability was based variously on (1) their status as transferees of the mortgagor's assets after a certificate of its dissolution was filed with the Kansas secretary of state on December 26, 1974; or (2) their status as stockholders of an undercapitalized corporation; or (3) their status as incorporators or stock subscribers of a corporation which had not complied with the statutory prerequisites to doing business. As a result of a series of motions most of the individual defendants, except those who had guaranteed the loan, were dismissed from the case. Although Tri-South appealed from the dismissals, it has since dismissed its appeal as to six of the individual appellees. In any event, the status of the individual defendants is not before us, except as it may be affected by the main issue.

That issue was raised by various motions to dismiss based on the fact that Tri-South had never qualified to do business in Kansas. Tri-South responded by an affidavit of one of its trustees to the effect that Tri-South's only activities in Kansas have been to lend money on real and personal property situated in this state and to deal in the security interests acquired in connection with such loans. The affidavit was not contested, and it appears conceded by defendants that if Tri-South were a corporation it would be exempt from qualifying in this state by virtue of K.S.A. 17-7303. That section defines what is "doing business" in Kansas so as to require a foreign corporation to register, and goes on to say:

"*Provided,* That foreign corporations shall have the right to receive, take, purchase and hold, by mortgage or otherwise, any securities or liens executed, given, transferred or intended to represent or secure loans upon real or personal property situated in this state, and to sell, assign, transfer, sue upon, foreclose or otherwise enforce the same; and any foreign corporation which engages in Kansas solely and

exclusively in the activities enumerated in this proviso shall not be required to obtain authority under this act to engage in such activities in this state."

The trial court reasoned as follows:

"2.  Defendants' motions to quash and/or dismiss are generally based upon plaintiffs' failure to comply with the statutory requirements of K.S.A. 17-2028 through 17-2035 relative to a 'business trust' or 'Massachusetts Trust' being permitted to conduct business in this state.

"3.  Plaintiffs generally contend that they are exempt from said statutes pursuant to K.S.A. 17-7303 relative to what constitutes a 'foreign corporation doing business' in this state.

"4.  The court directs counsel's attention to K.S.A. 17-2035 which I excerpt from and emphasize as follows: 'Business trusts shall be subject to all applicable provisions of law . . . relating to domestic and foreign corporations . . . except to the extent that such provisions of law are inconsistent with the specific provisions of this act.'

"5.  This court therefore finds and concludes as a matter of law that K.S.A. 17-7303 does not exempt plaintiffs who are admittedly a 'business trust' or 'Massachusetts Trust' within the purview of Kansas law, from complete compliance with the aforecited statutes specifically defining and regulating their transaction of business within this state."

We agree with the trial court that the controlling statute is K.S.A. 17-2035, part of the Kansas business trust act of 1961, quoted in part in finding number 4, above. The real question is whether the exemption of 17-7303 for foreign *corporations* which only lend money in Kansas is inconsistent with any of the "specific provisions" of the business trust act.

That act (Laws 1961, ch. 127) was the culmination of a long series of problems arising from the operation in this state of those hybrid business entities known as business trusts or, more commonly, "Massachusetts" trusts. The court was repeatedly faced with determining whether they should be treated as corporations, partnerships, true trusts, or simply illegitimate creatures of whom the law should take no cognizance whatever. A few of our cases will illustrate those problems.

The seminal case is *Lumber Co. v. State Charter Board*, 107 Kan. 153, 190 Pac. 601. The plaintiff trust there was organized to engage in a general manufacturing, mercantile or commercial business. The court first held that because the trust had not complied with our corporation code the state charter board was not required to consider its application to sell stock in Kansas. As a result of a post-decision motion to modify, however, it was recognized that such an organization met the definition of a

"corporation" found in Article 12, § 6 of our Constitution. As a constitutional "corporation" it was entitled to have its shares considered for registration under our Blue Sky law, although its right to qualify to do business in this state was again questioned because the statutes covering qualification to do business were couched solely in terms of corporations.

In *Harris v. Oil Co.*, 110 Kan. 532, 204 Pac. 754, the court upheld a judgment against a Massachusetts trust which was operating as an oil driller and producer. For that purpose the trust was a viable business entity upon whom service could be made by publication in its trade name. The court had occasion to reaffirm that " 'Massachusetts trusts' are corporations within the meaning of our statutes where reasonably applicable." (p. 537.)

In *Hamilton v. Young,* 116 Kan. 128, 225 Pac. 1045, the court held that the trustees of another oil producing trust were not personally liable on a promissory note they executed in the name of the trust. Thus limited liability, one of the prime attributes of a corporation, was apparently extended to a Massachusetts trust. However, in *Weber Engine Co. v. Alter,* 120 Kan. 557, 245 Pac. 143, the court noted that the nonliability in *Hamilton* was predicated on the peculiarities of the negotiable instrument law, and not on the nature of the business entity. When it came to an ordinary contract for the purchase of machinery for use in the trust's business the trustees were personally liable—only by adhering to the letter of the corporation act could they secure the benefits of a corporation's limited liability.

*Weber* was followed in *Linn v. Houston,* 123 Kan. 409, 255 Pac. 1105, where trustees of a Wyoming based Massachusetts trust were held personally liable on an oil drilling contract.

The conceptual difficulties in dealing with such a creature are graphically illustrated in the assorted litigation involving United Royalty Company. That was an Oklahoma based Massachusetts trust which conducted a vast oil royalty pooling operation in Kansas from the 1920's through the 1950's without either qualifying to do business or registering its securities under the Blue Sky laws. In *Fitch v. United Royalty Co.,* 143 Kan. 486, 55 P.2d 409, it was held that a Kansas landowner could not avail himself of United's failure to qualify in order to void a mineral deed given in exchange for United's shares. Only the state could challenge the failure to qualify. Further, the lack of Blue Sky registration

might have been a defense to an action on an executory contract, or grounds for rescission in an action promptly brought, but it did not foreclose United from successfully interposing the defense of laches against its grantor-stockholder. Then, in *Froelich v. United Royalty Co.*, 178 Kan. 503, 290 P.2d 93, United secured a reversal of a judgment cancelling a mineral deed to it, and had its title quieted to the mineral interest involved. No question was raised as to its capacity to sue or be sued or its failure to qualify or register its securities. Finally, in *State, ex rel., v. United Royalty Co.*, 188 Kan. 443, 363 P.2d 397, in a protracted suit that lasted over ten years, the state secured a judgment enjoining United from doing further business in this state until it qualified and registered its securities. For both those purposes, it was held, United was a "corporation" despite the fact that it was not incorporated under the laws of any state. Once it qualified and registered, however, all its prior business and contracts were legitimated. The fact that the statutes governing qualification still dealt only in terms of corporations did not trouble the *United Royalty* court as it had the *Lumber Co.* court forty-odd years earlier.

Such cases demonstrate that a Massachusetts trust is not a true corporation, but has long been a recognized business entity with some but not all the attributes of a corporation. For lack of legislative recognition, however, from *Lumber Co.* through the last *United Royalty* case our court was required to fit a Massachusetts trust into the corporate mold, at least for the purpose of public regulation.

In 1961, just before the last *United Royalty* case was finally decided, the legislature at last came to grips with the problem by enacting the business trust act, now K.S.A. 17-2027 *et seq.* An examination of the twelve sections of the act shows that the legislature, like the court over the years, dealt with business trusts essentially by treating them as corporations: Section 1 (17-2027) gives the title of the act. Section 2 (17-2028) is the definition section (of which more will be said later). Section 3 (17-2029) says that a business trust shall be "a permitted form of association for the conduct of business in this state." Section 4 (17-2030) requires any business trust, "whether domestic or foreign, desiring to transact business in this state," to file with the secretary of state its declaration of trust and other information about its structure,

and for a foreign trust a designation of an agent for the service of process similar to that required of qualifying foreign corporations by specific reference to what is now 17-7301 of the corporation code. Section 5 (17-2031) specifies filing fees. Section 6 (17-2032) imposes personal liability on trustees for debts and obligations incurred by the trust before complying with the act. Section 7 (17-2033) requires filing of amendments to the trust instrument. Section 8 (17-2034) grants to a business trust all power and authority contained in its trust instrument, so long as not contrary to public policy and so long as the business to be transacted is such as could be done by "a private corporation for profit organized under the laws of this state."

Section 9 (17-2035), quoted in part in the trial court's findings, reads in full:

"Business trusts shall be subject to all applicable provisions of law, now in effect or hereinafter enacted, relating to domestic and foreign corporations, respectively, with regard to the issuance of securities, filing of required statements and reports, service of process, general grants of power to act and to sue or be sued, limitations upon individual liability of stockholders, and rights to acquire, mortgage, sell, lease, operate, and otherwise deal in or with real and personal property, except to the extent that such provisions of law are inconsistent with the specific provisions of this act."

Section 10 (17-2036) requires annual reports. Section 11 (17-2037) provides for dissolution or withdrawal from the state. Section 12 (17-2038) is a severability clause.

From the act as a whole there appears an implicit but clear legislative purpose to regulate business trusts in a manner which parallels in almost every particular the legislative regulation of corporations; exceptions are made only where the nature of such an organization's organic instrument requires. In particular, the laws governing foreign corporations which relate to dealings in property and the right to sue and be sued are incorporated by reference in 17-2035, except where inconsistent with the "specific provisions" of the business trust act.

We look in vain in the business trust act for any definition of what constitutes "doing business in this state," comparable to the definition of that term for foreign corporations found in 17-7303. Hence we conclude that 17-7303 does not conflict with any "specific provision" of the business trust act, and applies to a foreign business trust. That section, of course, contains the proviso quoted above which exempts foreign corporations from

registering if their business in Kansas is limited to that of the plaintiffs here.

Defendants, in their search for a "specific provision" of the business trust act which would require registration, fasten on 17-2028, the definition section. It provides:

"(a) A 'business trust' is an unincorporated business association of the type which at common law was known as a 'common-law trust,' 'business trust,' or 'Massachusetts trust,' created by a trust instrument under which property is held, managed, administered, controlled, invested, reinvested, and operated by trustees for the benefit and profit of such persons as are or may become the holders of transferable certificates evidencing beneficial interests in the trust estate, the holders of which certificates are entitled to the same limitation of personal liability extended to stockholders of private corporations for profit;

"(b) a 'domestic' business trust is one created under the laws of this state;

"(c) a 'foreign' business trust is one created under the laws of a foreign country or of a territory or state other than Kansas; and

"(d) the 'corpus' of any business trust is equivalent to the capital and accumulated earnings or earned surplus of a corporation."

We are unable to see how that section helps the defendants. It defines a business trust, but it certainly does not define what constitutes "doing business in this state" by such a trust. It also describes in a general way how a business trust is operated, but it does not purport to limit its lawful activities to any particular type of business. Indeed, 17-2034 says it may do anything a corporation may do.

Their argument is that the statutory phrase "investment and reinvestment" limits a business trust to a passive use of its money, exemplified by the mortgage investment made here. If this activity does not require registration, they say, no foreign business trust will ever be required to register. We think the argument is refuted by the broad powers conferred by 17-2034, as noted above.

In addition, we think defendants take an unduly restrictive view of what constitutes the "investment" of money. Our own cases reflect Massachusetts trusts engaging in, for example, general merchandising, manufacturing, quarrying, road building, and oil production—in each of which enterprises the trust's funds were "invested." The list is amplified by a case relied on by defendants, *Hemphill v. Orloff,* 238 Mich. 508, 213 N.W. 867 (1927), aff'd 277 U.S. 537, 72 L.Ed. 978, 48 S.Ct. 577. The court was there determining whether a foreign Massachusetts trust dealing in commercial paper should be required to qualify under

the Michigan statute (which contained no exemption like ours for money lenders). The court noted with some alarm that Massachusetts trusts were not limited to the type of "investment" indulged in by conventional trusts, and that it was only proper to require them to comply with restrictions imposed on corporations. Speaking fifty years ago the court observed:

"Some of the cases give us a glint of the broadened field for investment of trust funds under the modern common-law trust. We enumerate a few of the activities disclosed by the case in which such trust funds have been invested: a mail order business, *Thompson v. Schmitt,* [115 Tex. 53 (274 S.W. 554)]; dealing in automobiles, *Palmer v. Taylor,* 168 Ark. 127 (269 S.W. 996); dealing in automobile tires, *State v. Gopher Tire & Rubber Co.,* 146 Minn. 52 (177 N.W. 937); manufacturing road material and road construction, *Weber Engine Co. v. Alter,* 120 Kan. 557 (245 Pac. 143); investment and construction, *Reilly v. Clyne,* [27 Ariz. 432 (234 Pac. 35, 40 A.L.R. 1005)]; dealing in land, *Weiser Land Co. v. Bohrer,* 78 Or. 202 (152 Pac. 869); 'a syndicate,' *King v. Commonwealth,* [197 Ky. 128 (246 S.W. 162, 27 A.L.R. 1159)]; *State v. Cosgrove,* 36 Idaho, 278 (210 Pac. 393); a toll bridge, *Willey v. W. J. Hoggson Corp.,* [90 Fla. 343 (106 South. 408)]; and prospecting for oil, producing, refining and selling it, if found, has not been overlooked, *Wagner v. Kelso,* [195 Iowa, 959 (193 N.W. 1)]; *State v. Summerland,* 150 Minn. 266 (185 N.W. 255); *Betts v. Hackathorn,* 159 Ark. 621 (252 S.W. 602, 31 A.L.R. 847); *Hamilton v. Young,* 116 Kan. 128 (225 Pac. 1045, 35 A.L.R. 496); *Victor Refining Co. v. National Bank,* 115 Tex. 71 (274 S.W. 561)." (238 Mich. at 524.)

All those activities, commonly carried on by individuals and corporations, were even then being carried on by Massachusetts trusts through the "investment" of trust funds. We see nothing in our act to prevent a business trust from carrying them on in Kansas, although not, of course, without registering. Hence it cannot be said that applying to a foreign business trust the same requirements and exemptions we apply to a foreign corporation in any way emasculates the business trust act, as defendants claim. There remains plenty of room for its operation.

The result is the trial court erred in requiring plaintiffs to qualify their trust before foreclosing, and its order restraining the foreclosure action must be reversed. It follows that it was not error to refuse to dismiss the action, as claimed on the cross-appeal, and that order will be affirmed.

Reversed as to the appeal, affirmed as to the cross-appeal, and remanded for further proceedings.