The opinion of the court was delivered by
 

 Valentine, J.:
 

 The main, if not the sole question involved in this controversy is, whether the state of Kansas, as an act of sovereignty, or in the exercise of a mere license or privilege, conferred upon it by the general government of the United States, may tax railroad property belonging to a private corporation, situated, exclusively within the boundaries of the Fort Leavenworth military reservation, in Kansas.
 

 The territory now known as the Fort Leavenworth military reservation is a portion of that vast territory which in 1803 was ceded by France to the government of the United States, and the territory now constituting such military reservation has belonged to the government of the United States ever since thesaid cession fromFrance; and from that time up to January 29,1861, the general government of the United States has had the sole and exclusive dominion and control over it, not only as the pro
 
 *755
 
 prietor and owner of the soil, but also as the sovereign and supreme ruler of the country. But on January 29, 1861, the government of the United States parted with its exclusive jurisdiction over it, and conferred jurisdiction, sovereignty and dominion over the same upon the state of Kansas. In other words, on January 29, 1861, the general government admitted the state of Kansas into the Union as a sovereign and independent state; and by such admission the sovereignty over this military reservation was transferred from the general government to the state of Kansas. This is admitted by all parties. Of course, the general government, in admitting Kansas-into the Union, might have excepted this military reservation from the boundaries of the state, if it had so chosen; but it. did not so choose. It might have reserved to itself the absolute sovereignty and dominion over this military reservation
 
 y
 
 if it had so chosen; but it did not so choose. It admitted Kansas into the Union upon the same footing as the original states, and by such admission placed this military reservation-within the unquestioned sovereignty and dominion of the-state of Kansas. Of course, the general government still retained and now retains the ownership of the soil; it still has the right to use the territory as a military post, or to dispose of it in any other manner which it may see fit; and its right to-so use the territory or to dispose of it does not conflict with any provision of either the federal constitution or the state constitution, or with the unquestioned and rightful sovereignty and jurisdiction of the state of Kansas. The federal government has continued to use such territory as a military post, up to the present time.
 

 From January 29, 1861, up to February 22, 1875, it is admitted that the sovereignty and jurisdiction of the state of Kansas over the military reservation was complete, and precisely the same as it was over every other portion of the territory of Kansas; and the state had the right to tax any property found on such territory which it could legally have taxed if the property had been found anywhere else within the;
 
 *756
 
 boundaries of the state. But on February 22, 1875, the legislature of the state of Kansas passed the following act, to wit:
 

 “SÉo. 1. That exclusive jurisdiction be and the same is hereby ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation known as the Fort Leavenworth reservation, in said state, as declared from time to time by the president of the United States, saving, however, to the said state the right to serve civil or criminal process ■within said reservation, in suits or prosecutions for or •on account of rights acquired, obligations incurred, or crimes •committed in said state, but outside of said cession and reservation; and saving further, to said state, the right to tax railroad, bridge and other corporations, their franchises and property, on said reservation.” (Laws of 1875, p. 95; Comp. Laws of 1879, p. 515.)
 

 It does not appear that this act of the legislature was passed at the solicitation, or at even the suggestion, of any officer or ■officers of the United States; but even if it had been, still such solicitation or suggestion would have been absolutely and utterly nugatory for all legal purposes, unless it came from some officer or officers exercising the sovereign power and authority of the general government. Neither does it appear that this act of the legislature has ever been accepted by the government of the United States. It is true that the plaintiffs petition alleges that the government has accepted all the rights and privileges attempted to be conferred by such act. But “neither presumptions of law nor matters of which judicial notice is taken, need be stated in the pleading.” (Civil Code, § 180.) And if the same should be stated, whether -correctly or incorrectly, the statement amounts to nothing. The transference of sovereign jurisdiction from one government to another, whether done by the supreme legislative power or the supreme executive power of the two governments, or by both of such powers combined, is a matter of •such transcendent importance, and of such great public concern, that the courts of each government should take judicial
 
 *757
 
 notice thereof. And hence an allegation in a pleading of the facts of such transference amounts to nothing. It is also true,, that the general government occupies this military reservation as a military post; but this it has done for fifty years, and without the slightest reference to the said act of the legislature of Kansas. An acceptance of an act of the legislature of a state, (such an act as the one in controversy,) probably requires an act of congress, or at least an executive proclamation. But if, however, we should say that presumptions are sufficient, and say that presumably the general government has accepted this act of the legislature of Kansas, because beneficial to it, or for any other reason, then we should also say that, in all fairness and justice to the people of the state of Kansas, the general government has accepted the act in its very letter and spirit, with all its exceptions and limitations, with all its saving clauses and reservations.' But it is said that the general government cannot accept the act in any such manner; and § 8, article 1, of the constitution of the United States, is interposed as a conclusive argument that no such acceptance can take place. Such § 8, article 1, of the constitution, so far as it is necessary to quote it, reads as follows:
 

 “ Sec. 8. The congress shall have power ... to exercise exclusive legislation, in all cases whatsoever, over such district, (not exceeding ten miles square,) as may, by cession of particular states and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall he, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings.”
 

 Now this section of the constitution does not seem to be applicable to the present ease. It provides that “ the congress shall have power ... to exercise exclusive legislation in all cases whatsoever . . . over all places purchased by the consent of the legislature of the state in which the same-shall be,” etc. Now, (1) “The congress” has never chosen “to exercise exclusive legislation” over the military reserva
 
 *758
 
 tion in question. On the contrary, it has chosen not to do so; for it admitted Kansas into the Union with such reservation, .and thereby gave to the state of Kansas the unquestioned power to exercise legislation, and jurisdiction over such military reservation; and congress has never changed its will or intention in this respect. (2) The territory occupied as a militory post has never been
 
 “purchased by the consent
 
 of the legislature of the state in which the same” is situated. (3) Nor has the legislature of Kansas ever consented that “the congress” of the United States, or any other body of men, or officer or officers of the United States, shall “exercise exclusive legislation” or exclusive jurisdiction, over said military reservation. The supposed exclusive jurisdiction that the legislature of Kansas ceded to the general government, was a jurisdiction with exceptions and limitations, and with reservations to the state of Kansas; and hence it was not a general ■or exclusive jurisdiction that was so ceded. It will therefore be seen that, unless this provision of the constitution of the United States is stretched much beyond its literal terms, it cannot be made to cover the present case, or to oust the state •of Kansas from exercising the jurisdiction which it reserved to itself, or to prevent it from exercising the power of taxation upon railroad property belonging to private corporations, situated on the said military reservation.
 

 It is not claimed that the constitution of Kansas authorizes any cession or transfer of jurisdiction over any of the territory of Kansas. No power to abandon sovereignty or to abdicate government can be found in the constitution of Ka'nsas. If any such power exists, it must be found in said § 8, art. 1, of the federal constitution, but that section does not meet the present case. The legislature has not
 
 consented to any purchase
 
 in the present case, nor has it
 
 consented to abandon jurisdiction
 
 to tax railroad property on the Fort Leavenworth military reservation. Nor has
 
 congress
 
 consented to exercise
 
 exclusive legislation
 
 over such military reservation. But, in order to make said section apply to the present ease, it is proposed to
 
 *759
 
 ■change its terms in the following material respects, to wit: Instead of allowing the section to read as it now does, that ■“the
 
 congress
 
 shall have
 
 power
 
 to exercise exclusive
 
 legislation
 
 ■over all places
 
 purchased
 
 by the consent of the legislature of the state,” etc., it is proposed to change it so that it shall read .as follows: “ The
 
 general government
 
 shall have power to exercise, and
 
 in all cases shall
 
 (whether it consents or not)
 
 exercise
 
 exclusive
 
 jurisdiction
 
 over all places where the exercise of
 
 any portion of such jurisdiction
 
 has be'en consented to by the legislature of the state,” etc.
 

 Now if the constitution of the United States is embodied in ■such elastic terms that it may be so stretched and changed as to cover cases wholly beyond and outside of its express terms, may it not also be so stretched and changed as to do exact justice and carry out the will and intention of the contracting parties under it? The stretch in the latter case is certainly not greater than that of the former.
 

 We suppose that the general government in cases like this ■can take just what the state proposes to give it, and nothing more. It is not necessary that the general government should have exclusive jurisdiction over military reservations, for from 1861 to 1875 the general government did not have any such exclusive jurisdiction over the military reservation in question; but the sovereign jurisdiction over such reservation during all that time was wholly within the state of Kansas; and yet no serious inconvenience was experienced because of the want of jurisdiction in the federal government. But it is said that the general government cannot accept partial jurisdiction; that it must have all, or none. Now if this be true, then we should think that it has not reeeivéd any jurisdiction, but that the entire jurisdiction over the reservation still remains in the state •of Kansas. But why should it be so, as claimed? If congress
 
 has the power
 
 (mark the words, “ the congress shall have power,”) to accept the entire jurisdiction over the ceded territory, why may it not accept a portion of such jurisdiction? And if the legislature has the power to cede away the whole of the juris
 
 *760
 
 diction of the state, over any portion of the territory of the-state, why may it not cede away a portion of such jurisdiction? The whole always includes all its parts. It would seem that any legislative body that has the power to do or accept the-whole of a thing, should have the power to do or accept a portion of such thing. Where all power can be conferred upon a legistive body, what insuperable objection can there be to conferring-a portion of such power upon such body? But, as before stated, if the general government cannot, and has not, taken a portion only of the jurisdiction over the Fort Leavenworth military reservation, then we do not think that it has taken anything, and the attempted cession by the legislature of Kansas is a nullity.
 

 It would seem, under § 8, article 1, of the federal constitution,, that congress should take some action before jurisdiction can pass from the state to the federal government; for the legislature of the state certainly cannot, of its own volition, cut off territory from the state, and force it into the jurisdiction of the-federal government, against the consent of congress, or else place such territory beyond the operation of all law, and outside of all jurisdiction. The legislature may act — it may propose-a cession of territory; but the territory intended to be ceded will remain within the jurisdiction of the state until congress-acts, and until congress consents that the territory shall pass-into the jurisdiction of the federal government. It takes two-parties to make a contract; and it takes the action of both the-state government and the federal government, before jurisdiction can be transferred from the state government to the federal government; and, so far as is shown in the present ease, only one party has acted — the state of Kansas. So far as is shown, in the present case,
 
 “
 
 the congress ” has not yet shown a willingness “ to exercise exclusive legislation
 
 ”
 
 over the ceded territory; but as we have before said, the last act of congress upon the-subject shows an unwillingness on the part of congress to exercise such exclusive legislation or jurisdiction over such territory. The act of the legislature in the present case is not like a contract, executed or otherwise, where one of the parties has-
 
 *761
 
 expended a large amount of labor or money, which he must lose unless the contract is enforced, for in the present case nothing has been done because of such act of the legislature; the general government has not parted with anything, nor has it changed its condition because of such act. Besides, the thing proposed to be ceded by such act of the legislature is unimportant to the state of Kansas, in comparison with the thing intended to be retained. The state of Kansas had no power, prior to the passage of the act, nor has it had since, to tax-tbo military reservation, or anything belonging to the United States thereon; but it had the power to tax the vast amount of railroad and bridge property which was then, and is now, situated upon said military reservation. Hence the thing attempted to be ceded by the legislature of Kansas had but little importance to the state of Kansas, in comparison with the thing intended to be retained by the legislature; and for this reason, if no other, it should not be held that all jurisdiction passed from the state of Kansas, without its consent. If, under said section of the federal constitution, it must be held either that all jurisdiction passed from the state of Kansas, or that nothing passed, then it certainly should be held that nothing passed.
 

 We think that the state of Kansas has power and authority to tax railroad property belonging to a private corporation situated exclusively within the boundaries of the Fort Leavenworth military reservation, and this is all we now wish to decide. We do not desire to decide specifically just what the civil and political status of the Fort Leavenworth military reservation is; or what it may be in the future, if the congress of the United States shall take action upon the aforementioned act of the legislature of Kansas. But in any event we should think that the state of Kansas should have power to tax the property aforementioned. To say that it should not have such power is to deprive the state of Kansas of such power and jurisdiction not only without its consent, but against its consent; and we can scarcely think that the constitution of the United States will authorize or even tolerate any such thing.
 

 
 *762
 
 The authorities will be found cited in counsel’s briefs. "We would, however, cite:
 
 In re O’Connor,
 
 37 Wis. 379;
 
 United States v. Cornell,
 
 2 Mason, 60, 66.
 

 The judgment of the court below will be affirmed.
 

 All the Justices concurring.