Clyde Graeber, Chair Donald Navinsky, Commissioner Gerald D. Oroke, Commissioner Leavenworth County Commission 300 Walnut Leavenworth, Kansas 66048-2815
Dear Leavenworth County Commissioners:
You request our opinion on whether specific property is subject to state taxation.
The property in question is the real and personal property associated with a proposed housing project for the United States Army and Fort Leavenworth. You indicate that, acting pursuant to P.L. 104-106, 110 Sat. 544, Title XXVIII, Subtitle A, § 2801, the Army is considering privatizing approximately 1,583 housing units located on its property, a federal enclave, located within the corporate limits of the City of Leavenworth.[1]
In connection with the Fort Leavenworth project, the Army has chosen a private entity (Michaels Military Housing, L.L.C., hereinafter referred to as "Michaels") as its development partner in the proposed venture.[2]
Leavenworth County does not currently tax the land within the federal enclave, as the housing units (and real and personal property thereon) are currently owned by federal authorities, thus exempting such property from taxation pursuant to K.S.A. 2004 Supp. 79-201a First.
However, the proposed agreement with Michaels may alter the ownership status of the units in question. Should the proposed arrangement take place as planned, the following will occur:
 The Army would lease the land and deed all the buildings to Fort Leavenworth Frontier Heritage Communities, (FLFHC).
 FLFHC is a limited liability company consisting of approximately 49% Army participation and 51% Michaels.
The terms of the leases would be as follows:
 1. The FLFHC would have a 50 year lease of the land with a 25 year renewal option. The Army would still be the owner of the land.
 2. The land lease would terminate according to the terms therein.[3]
 3. The housing units and the personal property therein (furniture, appliances, etc.) would be transferred by a bill of sale and deeded to the private entity, with ownership of said interest to revert back to the Army if/when the land lease terminates.[4]
 4. The leases and sub-leases will not be recorded under K.S.A. 79-412.[5]
 5. The Garrison Commander may impose restrictions on access to or use of the property, as deemed advisable for purposes of security, force protection, or military necessity.
 6. The Army will require the housing units to be leased to members of the armed forces and their dependents at a rate no higher than basic allowance for housing received by military families.
 7. The housing units will not be rented to civilians as long as military tenants are available.
 8. Michaels anticipates receiving no income from civilian renters.[6]
 9. In order to finance the purchase and project, Michaels would borrow money from a lender and FLFHC would pay for the ground rental and interest on the loan. Michaels would also develop and operate the project by way of agreements with three other legal entities; Michaels Development Company, Interstate Realty Management, and MMH (a New Jersey limited liability company).
 Based upon these facts, you ask that we answer the following questions:
 "1. When the housing units are transferred by bill of sale in connection with the ground lease by the U.S. Army to FLFHC, do the structures become taxable as personal property even though they must be reconveyed to the U.S. Army whenever the ground lease terminates, or would the current exemption to such taxation be maintained?
"2. If the units are taxable, at what rate?
 "3. Is the personal property located within the housing units, i.e. refrigerators, stoves, and furniture taxable, or would the current exemption to such taxation be maintained?
 "4. Is the business machinery and equipment of FLFHC, i.e. computers, office furniture, etc. taxable?
 "5. If the housing units and the personal property are taxable, can the County agree not to tax the property and instead enter into a Payment in Lieu of Taxes (PILOT) agreement with FLFHC to avoid any future disputes as to taxability?
 "6. In the alternative, if you are of the opinion that the housing units and the personal property are not taxable, and that all current exemptions to such taxation would be maintained, can the County enter into a PILOT agreement with FLFHC to avoid future disputes as to taxability?"[7]
The State and its political subdivisions generally cannot tax the federal government or lands owned by the Federal government unless the federal government has ceded such taxing authority to the State.[8]10 U.S.C. § 2667 governs leases of non-excess property of the military and it allows states to tax property leased under that Act.10 U.S.C. § 2878 specifically applies to military housing, but it does not address taxation of such property. There appears to be no federal preemption of state taxation in these circumstances. Rather, the questions you pose must be answered by examining Kansas statutes and case law.
Under the Kansas Constitution and statutes, taxation is the rule and exemption is the exception. One claiming exemption from taxation has the burden of showing that the property comes clearly within the exemption claimed.[9] Ordinarily, tax exemption statutes are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify.[10]
Representatives of Michaels note that K.S.A. 2004 Supp. 79-201a First
exempts federally owned property from state taxation and further point out that K.S.A. 2004 Supp. 27-102 et seq. provide special tax laws with regard to Fort Leavenworth.[11] These proponents of tax exemption go on to discuss and emphasize the various definitions of "corporation" for purposes of interpreting K.S.A. 27-102, arguing that FLFHC, a limited liability company is not the legal equivalent of a corporation.
Exemption under K.S.A. 2004 Supp. 79-201a First
It is clear that property owned by the United States is exempt from Kansas property tax. K.S.A. 2004 Supp. 79-201a states:
 "The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas: . . . First. All property belonging exclusively to the United States, except property which congress has expressly declared to be subject to state and local taxation."[12]
Kansas cases concerning tax exemption of property often focus upon the uses being made of specific property. This is because most tax exemptions are based upon an "exclusive use" test. For example, on June 25, 2005, the Kansas Court of Appeals stated:
 "Kansas courts have adopted a number of principles related to the construction of a tax exemption: (1) when the legislative intent is in doubt, constitutional and statutory exemptions from taxation must be strictly construed in favor of taxation; (2) the burden of establishing the applicability of an exemption from taxation lies with the party claiming the exemption; (3) when property taxation is at issue, the issue is whether the property is exclusively used for an exempt purpose, unless the statute indicates a more permissive exemption; and (4) exclusive use means: the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. Whether the organizations using the property possess a tax-exempt character is relatively immaterial because it is the use of property, not the character of the owner, which determines the applicability of an ad valorem tax exemption."[13]
However, the general exemption for property of the United States government does not involve exclusivity of use. It rests solely upon ownership. The land in question will be leased to an entity that is a limited liability company, which is formed and owned partly by the Army and partly by a private company. The fee title to the land will not be deeded over to any other entity. Thus, the United States government remains the owner of the land itself and the land therefore clearly remains exempt from state property tax.
By contrast, the housing units and personal property therein will be deeded over and ownership transferred to the company. The proposed "sale" provides for a reconveyance of the units, but only after the lease of the real estate expires, and only if the lessee does not exercise the option to purchase.[14] It appears to us that the intent and actual effect is for ownership of the property to pass to the private entity. Thus, because K.S.A. 2004 Supp. 79-201a First provides an exemption for property owned by the federal government but not for property owned by entities who are working with or for the federal government,[15]
K.S.A. 2004 Supp. 79-201a First will not exempt such property from taxation.[16]
Representatives of Michaels direct our attention to United States v.Board of County Commissioners.[17] In that case, the corporation in question was formed and operated by the military and was created and allowed to function only as permitted by the government.[18] In the present situation, according to the facts presented to us, while the military is playing a role in the creation of the limited liability companies, the military is not the sole incorporator. Nor is the federal government directing, operating or controlling the businesses in question. Rather, there are private citizens participating in and overseeing the "privatization" of the housing units. We do not believeUnited States v. Board of County Comm'rs is apposite to the facts before us and cannot be used to argue that the housing units and personal property are exempt from taxation under K.S.A. 2004 Supp. 79-201a First.
K.S.A. 27-101 et seq. and Act to Cede Jurisdiction
Attorneys for the limited liability company also argue that K.S.A. 27-102
provides an exemption in addition to that enunciated in K.S.A. 79-201aFirst, and that Kansas case law makes K.S.A. 27-102b applicable only to corporations, not a limited liability company.
 "The lands lying within the boundaries of the Fort Leavenworth reservation have been owned by the United States since their acquisition from France in 1803 as a part of the Louisiana Purchase. They were not acquired by the United States pursuant to K.S.A. 27-101
(L. 1927, ch. 206, § 1). It appears the original reservation of the Fort Leavenworth lands by the United States for its purposes was made by an Executive Order in 1854. When Kansas was admitted as a state in 1861, the United States did not reserve jurisdiction. On February 25, 1875, upon passage by the state legislature of `An Act to Cede Jurisdiction to the United States over the territory of the Fort Leavenworth Military Reservation,' L. 1875, ch. 66, § 1, Kansas ceded to the United States exclusive jurisdiction over and within the territory included within the limits of the reservation saving to the State of Kansas `the right to tax railroad, bridge and other corporations, their franchises and property,' on the reservation. Similar language of reservation of jurisdiction appears in K.S.A. 27-102. (The background we have highly summarized may be found by examination of K.S.A. 27-101; K.S.A. 27-102; K.S.A. 27-104; L. 1875, ch. 66, § 1; Benson v. United States, 146 U.S. 325, 36 L.Ed. 991, 13 S.Ct. [1892]; Fort Leavenworth R.R. Co. v. Lowe, 114 U.S. 525, 29 L.Ed. 264, 5 St. Ct. 995 [1885]; Hayes v. United States, 367 F.2d 216 [10th
Cir. 1966]; Murphy v. Love, 249 F.2d 783 [10th Cir. 1957]; Ft. L. Rld. Co. v. Lowe, Sheriff, 27 Kan. 749
[1882]; G.S. 1915, ch. 59, § 5784; Act for Admission of Kansas into Union, Jan. 29, 1861, ch. 20, § 1, 2, 3, 4, 5, 12 Stat. 126, 127, 128.)
 "As to the case before us, the jurisdiction of the United States on the one hand and the State of Kansas on the other hand is delineated by the 1875 Act. That cession and reservation of jurisdiction is unqualified as to usage or purpose of ownership. Neither the use of the lands nor the purpose of the United States ownership is of any moment. (See Hayes v. United States, 367 F.2d at 220; Benson v. United States, 146 U.S. at 330.)"[19]
According to this case, the lands comprising Fort Leavenworth were not
acquired pursuant to the provisions of K.S.A. 27-101; therefore, the K.S.A. 27-102 jurisdictional limitations do not apply to those lands. However, the Act to Cede Jurisdiction to the United States over the territory of the Fort Leavenworth Military Reservation[20] contains similar language, ceding exclusive jurisdiction over and within the territory of the reservation to the United States Government and, with regard to taxing powers, reserving only the right to tax the franchises and property of "railroad, bridge and other corporations" on the reservation.[21]
The United States Supreme Court has held that federal jurisdiction over Fort Leavenworth is exclusive except where reserved.[22]
The Act to Cede Jurisdiction is not a tax exemption statute; it is truly a cession of jurisdiction, including taxing authority, except as specifically reserved by the Act. Thus, notwithstanding the general property tax statutes, constitutional provisions and case law interpreting those provisions, the State and its political subdivisions have authority to tax only the franchises and property of corporations on the Fort Leavenworth reservation.[23] Thus, the nature of the private entities that will own and operate the housing units is the key to whether those units (and other property held by those private entities) are taxable.[24]
We are told the entity that will obtain ownership of the housing units and personal property in question, FLFHC, has been formed as a limited liability company. While there is no case law or statutory provision directly on point, if this LLC was properly formed under the Kansas Revised Limited Liability Company Act[25] and remains in conformance with the provisions of that Act, it is our opinion the Board of Tax Appeals and the Courts would find that it is not a corporation[26] and thus not subject to taxation of property it owns that is within the boundaries of Fort Leavenworth.[27]
Therefore, in answer to your first four questions, if the leases and deeds in question do not transfer fee ownership in the land, the buildings, or their content, and if the ownership of said property remains vested in the United States Army, it is our opinion that under K.S.A. 2004 Supp. 79-201a First, the property will remain exempt from state property tax. Any property that will not be owned by the federal government will be exempt from taxation under L. 1875, ch. 66, § 1, except for property that is owned or operated by a private corporation, even one involved in privatization of military housing.[28] If any of the real or personal property is owned by a private corporation, it should be taxed at the rates applicable to such property generally.[29]
If it is determined from the facts that the real property, structures thereon, and personal property are in fact owned by two different and distinct entities, one being taxable and the other not taxable, the valuation of each may require some apportionment of value. Under K.S.A. 2004 Supp. 79-412:
 "It shall be the duty of the county or district appraiser to value the land and improvements. The value of the land and improvements shall be entered on the assessment roll in a single aggregate, except as hereinafter provided. Improvements owned by entities other than the owner of the land shall be assessed to the owners of such improvements, if the lease agreement has been recorded or filed in the office of the register of deeds. . . . Delinquent taxes imposed on such improvements may be collected by levy and sale of the interests of such owners the same as in cases of the collection of taxes on personal property."[30]
Payment in Lieu of Taxes
Your final two questions both concern a proposed agreement between the County and the other parties, which you call a "Payment in Lieu of Taxes" (PILOT) agreement. You ask if such an agreement may be entered into to avoid future disputes or litigation over taxation. Without reviewing an actual agreement and all terms therein, we can only answer in the abstract.
General authority to enter into PILOT agreements is set forth at K.S.A. 12-147:
 "Every taxing subdivision of the state of Kansas is hereby authorized and empowered to enter into contracts for the payment of service charges in lieu of taxes, with the owner or owners of property which is exempt from the payment of ad valorem taxes under the laws of the state of Kansas and is further authorized to receive and expend revenue resulting therefrom in the manner hereinafter provided."[31]
Thus, this statute may authorize such an agreement if the property inquestion is exempt from ad valorem taxation. As we have determined that the property in question will likely be determined to not be taxable, we end our analysis here and need not address the authority of the county to enter a PILOT agreement if the property in question were taxable. We note, however, that:
 "A board of county commissioner is without authority to forgive interest and penalties lawfully owed as a result of unpaid taxes. Moreover, county officials and school district officials cannot decline receipt of tax moneys which should be received by operation of law. Tax moneys must be collected and distributed in the manner and to the entities prescribed by law. . . ."[32]
This is based in part upon K.S.A. 79-1703 which states in pertinent part:
 "(a) Except as provided in subsection (b) or as otherwise provided by law, no board of county commissioners or other officer of any county shall have power to release, discharge, remit or commute any portion of the taxes assessed or levied against any person or property within their respective jurisdictions for any reason whatever. Any taxes so discharged, released, remitted or commuted may be recovered by civil action from the members of the board of county commissioners or such other officer and the sureties of their official bonds at the suit of the attorney general, the county attorney, or of any citizen of the county or the board of education of any school district a part of the territory of which is in such county, as the case may be, and when collected shall be paid into the county treasury to be properly apportioned and paid to the county, municipalities, school districts and other taxing subdivisions entitled thereto."
Thus, unless the county is operating pursuant to a specific statute allowing an agreement for "payment in lieu of taxes," the terms of which match the facts of a given situation, a county may not simply agree to forgo collection of taxes that would otherwise be due and owing.
In summary, it is our opinion pursuant to K.S.A. 2004 Supp. 79-201aFirst, property owned by the federal government is not subject to Kansas property tax. Thus, if the fee ownership in property located within a federal enclave remains vested in the United States's government, it is exempt from state property tax.
Additionally, other property within the military reservation is generally not taxable by the State due to provisions of the act ceding that property, and jurisdiction over it, to the federal government. The exception to this rule is for property of corporations within the reservation.
Real or personal property owned by a private corporation within the Fort Leavenworth enclave should be valued and taxed at the rates applicable to such property generally. A payment in lieu of taxes agreement may be entered into under K.S.A. 12-14 if the property is exempt from taxation. If property is not exempt from taxation, K.S.A.79-1703 generally prohibits a county commission from releasing, discharging, remitting or commuting any portion of the taxes assessed or levied against any person or property within their respective jurisdictions for any reason.
Sincerely,
 Phill Kline Attorney General of Kansas
 Theresa Marcel Bush Assistant Attorney General
PK:JLM:TMB:jm
[1] The 1996 federal initiative authorized the military to form partnerships with private companies to build, renovate, and manage housing for service personnel. Under the program, the military branch and the developer form a company to finance the project. The company then owns the existing housing under a ground lease that typically lasts 50 years, and the developer oversees the process of designing, renovating and building the housing in exchange for fees. By Terry Pristin, New York Times March 6, 2005. See also Military Housing Privatization Initiatives: Hearings Before the Subcommittee on Military Installations and Facilities of the House Committee on National Security, 102nd Cong. (1996).
[2] David Kenner, legal counsel for this L.L.C., provided input on the questions presented.
[3] The draft lease provided for our review allows the Lessee a first purchase option should the site or installation be subject to a base closure.
[4] This transfer of ownership of personal property also creates a contingent reversionary interest vested in the Army.
[5] Per page 4 of the letter to our office from Michaels.
[6] It does not, however, appear that there will be any direct prohibition against such rentals or income. Moreover, Michaels anticipates some profit to be realized as a result of the proposed arrangement.
[7] Citations omitted.
[8] McCullough v. Maryland, 455 U.S. 720 (1982).
[9] Defenders of the Christian Faith, Inc. v. Horn, 174 Kan. 40, 44
(1953).
[10] Presbyterian Manors, Inc. v. Douglas County, 268 Kan. 488, 492
(2000).
[11] The draft lease provided for our review makes payment of taxes the responsibility of the lessee.
[12] Emphasis added.
[13] In re Application of K.S.U. Foundation for Exemption from AdValorem Taxation in Riley County, Kansas, Case No. 92,407.
[14] A remainder interest in real estate may be vested subject to partial or complete divestment or defeasance. Whether an interest is vested or contingent depends on the proper interpretation of the instrument that created it. Stalcup v. Detrich, 27 Kan.App.2d 880, 884
(2000).
[15] See, e.g.., K.S.A. 27-102b and 27-102c.
[16] Friendship Village of Greater Milwaukee, Inc. v. City ofMilwaukee, 181 Wis. 2d 207, 511 N.W.2d 345 (Ct.App. 1993).
[17] 194 Kan. 614 (1965). This case found that under the "Capehart Act," 12 U.S.C.A. §§ 1958, 1748b, a corporation created as the "mortgagor-builder" was instrumentality of United States Government, and thus allowed the same tax immunity.
[18] "The corporations organized at the government's insistence and according to government prescribed forms are almost empty shells. . . . the original paid-in capital of $1,000 is paid over to the government prior to construction in exchange for a 55 year leasehold under which the lessee has no right to use or possession. This is their only asset pursuant to the housing contract and related documents and they are expressly prohibited from acquiring others." 194 Kan. 614, 619 (1965).
[19] In re Armed Forces Cooperative Insuring Ass'n, 5 Kan.App.2d 787,789-90 (1981) (emphasis added).
[20] L. 1875, ch. 66, § 1; see also K.S.A. 27-104.
[21] Id.
[22] Benson v. United States, 146 U.S. 325, 329, 331, 13 S.Ct. 60,36 L.Ed. 991, 993-94 (1892).
[23] See also K.S.A. 27-102b and 27-102c.
[24] See In re Armed Forces at 793.
[25] K.S.A. 2004 Supp. 17-7662 et seq.
[26] See Investcorp, L.P. v. Simpson Inv. Co., L.C., 277 Kan. 445, 459
(2003); Hecker, The Revised Limited Liability Company Act, 69 J.K.B.A. No. 10 at 16 (Nov./Dec. 2000); Attorney General Opinion No. 2001-19.
[27] In re Armed Forces, 5 Kan.App.2d at 790-94.
[28] K.S.A. 27-102b and 27-102c.
[29] See K.S.A. 1739 et seq. for property classification. Without learning the exact nature of the company, we cannot say at which rate its property should be taxed.
[30] Emphasis added. Note, if the required language is not included in the anticipated lease agreement, there may result in the tax burden shifting back to the federal owner who has voluntarily leased property for so long that its ownership has shifted.
[31] Emphasis added.
[32] Attorney General Opinion No. 91-6.